| | |
|---|---|
| Kevin Birdo, | |
| Plaintiff, | Case No. 13-CV-6864 |
| v. | |
| Deputy Director Dave Gomez et al., | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This case involves claims by Plaintiff Kevin Birdo ("Plaintiff" or "Birdo"), a former inmate at Stateville Correctional Center ("Stateville"), against 11 separate prison personnel for incidents that occurred over the course of Plaintiff's incarceration. Plaintiff's First Amended Complaint [61] alleges nine causes of action that include state law torts of intentional infliction of emotional distress and negligent supervision, as well as 42 U.S.C. § 1983 violations for excessive force, failure to protect, and retaliation. On March 25, 2016, Defendants John Combs ("Combs"), Anthony Egan ("Egan"), David Gomez ("Gomez"), Michael Lemke ("Lemke"), Jenny McGarvey ("McGarvey"), Kenneth Nushardt ("Nushardt"), Nancy Pounovich ("Pounovich"), and Elizabeth Rivera ("Rivera") (collectively, the "State Defendants") filed a motion for summary judgment as to all counts. State Defs.' Mot. Summ. J. [139]. On March 29, 2016, Defendants Dr. Usha Kartan ("Kartan"), Dr. Catherine Larry ("Larry"), and Susan Wilson ("Wilson") (collectively, the "Mental Health Defendants") filed a separate motion for summary judgment.

Mental Health Defs.' Mot. Summ. J. [145]. This Memorandum Opinion and Order addresses both motions, which, for the reasons discussed below, are granted in part and denied in part.

# I. Background

## A. The Parties

Plaintiff was an inmate incarcerated at Stateville between spring 2011 and March 11, 2013. State Defs.' Rule 56.1 Statement of Facts [141] Attach. 1 at 16:18-17:5. During the timeframe of Plaintiff's First Amended Complaint, Defendant Gomez was employed as Deputy Director of the Northern Division of the Illinois Department of Corrections ("IDOC"). State Defs.' Rule 56.1 Statement of Facts [141] ¶ 2. Defendant Lemke was employed as Warden of Stateville. *Id.* ¶ 4. Defendant Pounovich was employed as Stateville's Assistant Warden of Programs. *Id.* ¶ 3.

Defendants Combs, Egan, McGarvey, Nushardt, and Rivera were employed as Correctional Officers at Stateville during various times of Plaintiff's confinement. *Id.* ¶¶ 5-9. Defendants Kartan, Larry, and Wilson were employed as mental health professionals at Stateville. Mental Health Defs.' Rule 56.1 Statement of Facts [146] ¶¶ 12-14.

## B. Plaintiff's Hunger Strike

Plaintiff claims that in August 2012, Stateville employees placed another inmate who Plaintiff believed to be mentally unstable in the same cell as Plaintiff. Pl.'s Rule 56.1 Statement of Additional Facts [159] ¶ 1. Plaintiff alleges that his

requests to be removed from his cell were ignored and Plaintiff was ultimately assaulted, resulting in a broken right pinkie finger. *Id.* ¶ 2. Plaintiff further claims that, due to the altercation and Plaintiff's protests, he was unfairly issued three disciplinary tickets. *Id.* ¶ 3. Plaintiff asserts that on October 17, 2012, he initiated a hunger strike as a result of the lack of medical attention for his broken finger and his receipt of the three disciplinary tickets.[1] *Id.* ¶ 7; First Am. Compl. [61] ¶ 18.

Inmates on a hunger strike are generally transferred to the infirmary for health reasons. State Defs.' Rule 56.1 Statement of Facts [141] ¶ 16. Therefore, starting on approximately November 14, 2012, Plaintiff was housed in the Stateville infirmary. *Id.* ¶ 15.

While prisoner hunger strikes are generally short in duration, Plaintiff's hunger strike continued for a significant period of time. Pl.'s Rule 56.1 Statement of Additional Facts [159] ¶ 8. When this occurs, Stateville medical staff force feeds inmates. State Defs.' Rule 56.1 Statement of Facts [141] Attach. 1 105:11-107:4. Plaintiff estimates that, during the duration of his hunger strike, Stateville employees attempted to force feed him approximately 70 times. *Id.* at 81:10-82:6.

If a prisoner refuses to comply with a force feed, the Stateville tactical team is deployed to assist Stateville medical staff. State Defs.' Rule 56.1 Statement of Facts [141] ¶ 28. Under Stateville's standard operating procedure, the tactical team first orders the inmate to move to his cell door and applies handcuffs. *Id.* ¶ 27. Tactical team members then place their arms on the inmate's shoulders, place him

---

[1] None of Plaintiff's claims derive from the alleged assault by his cellmate or any subsequent disciplinary action; rather, they flow from Defendants' alleged responses to Plaintiff's hunger strike and resulting grievances.

in a restraint chair, and stand on either side of him. *Id.* If an inmate refuses the tactical team's orders to "cuff up" at the cell door, the tactical team enters the cell and places restraints on the inmate. *Id.* ¶ 30. Plaintiff alleges that, during the duration of his hunger strike, the tactical team was called to force feed Plaintiff more than 50 times. Pl.'s Rule 56.1 Statement of Additional Facts [159] Attach. 1 at 89:1-7.

Once the inmate is secure, medical staff enters the cell and performs the force feed. State Defs.' Rule 56.1 Statement of Facts [141] ¶ 27. Stateville medical staff inserts a nasogastric tube into the inmate's nose and feeds the prisoner "Ensure" or "Boost" dietary drink. *Id.* Following completion of the force feed, prison personnel leave the inmate's cell. *Id.*

### C. Events of February 3-4, 2012

#### 1. The Complaint to Defendants Gomez and Lemke

Plaintiff claims that, on February 3, 2012, the tactical team was called to force feed Plaintiff. Pl.'s Rule 56.1 Statement of Additional Facts [159] ¶ 12. Plaintiff further alleges that, during this force feed, the tactical team slammed Plaintiff's head into the wall. *Id.* Plaintiff claims that he complained of the incident to Internal Affairs, who referred the matter to Defendants Gomez and Lemke. *Id.* ¶ 13.

Plaintiff alleges that, on February 4, 2012, Defendants Gomez and Lemke spoke to Plaintiff at the infirmary. *Id.* ¶ 14. Plaintiff claims that he told Defendants Gomez and Lemke that the tactical team had been physically and

emotionally abusing him throughout the duration of his hunger strike and that he feared for his safety. *Id*. Plaintiff alleges that Defendants Gomez and Lemke stated that they would look into the issue. *Id*.

### 2. Actions by Defendants Combs and Egan

According to Plaintiff, on February 4, 2012, shortly after his complaint to Defendants Gomez and Lemke, the tactical team returned to Plaintiff's cell. Pl.'s Rule 56.1 Statement of Additional Facts [159] ¶ 15. Members of the tactical team included Defendants Combs and Egan. *Id*. Plaintiff alleges that the tactical team forced Plaintiff to stand in the corner of his cell while Defendants Combs and Egan "looked at obituaries and pictures of his family, taunted Plaintiff," and impermissibly "threw his personal items in the trash." *Id*. Plaintiff further alleges that the actions of Defendants Combs and Egan were ordered by Defendants Gomez and Lemke as retaliation against Plaintiff's grievances and ongoing hunger strike. First Am. Compl. [61] ¶¶ 33, 89.

State Defendants present an alternate version of events. State Defendants assert that Stateville inmates on segregation status are allowed limited personal property. State Defs.' Rule 56.1 Statement of Facts [141] ¶ 25. State Defendants claim that, pursuant to this policy, on February 4, 2012, excess property was removed from Plaintiff's cell. *Id*. According to State Defendants, excess property is sent to the property room, not the trash, where an inmate may retrieve it so long as he remains in cell compliance. *Id*.

**D.    Events of March 7, 2012**

        **1.    The Attempted Force Feed**

At 10:30 a.m. on March 7, 2013, Defendant McGarvey activated the tactical team to assist medical staff with a force feed of Plaintiff. State Defs.' Rule 56.1 Statement of Facts [141] ¶ 31. Members of the tactical team included Defendants Nushardt and Rivera. *Id.*

The parties contest the remaining events surrounding Plaintiff's attempted force feed. Plaintiff claims that, upon arrival, rather than ordering Plaintiff to "cuff up" near the cell door, Defendant Nushardt ordered Plaintiff to lie on the bed and put his hands behind his back. Pl.'s Rule 56.1 Statement of Additional Facts [159] ¶¶ 22-23. Plaintiff claims that even though he immediately complied with this order, Defendant Nushardt entered his cell and purposely slammed his shield on Plaintiff's hand and back, intending to harm Plaintiff. *Id.* ¶ 25. Plaintiff claims that he "screamed out in pain," but that Defendant Nushardt continued pressuring his shield on Plaintiff's hand and back. *Id.* ¶ 26. Meanwhile, the remaining members of the tactical team taunted, cursed at, and threatened Plaintiff. *Id.* Plaintiff claims that Defendant Nushardt's action re-broke Plaintiff's right pinkie finger. *Id.*

According to State Defendants, the tactical team *did* order Plaintiff to "cuff up" at his cell door. State Defs.' Rule 56.1 Statement of Facts [141] ¶ 33. Defendants claim that when Plaintiff failed to comply, the tactical team ordered Plaintiff to lie on the bed and place his hands behind his back. *Id.* ¶ 32. Due to

Plaintiff's noncompliance with the tactical team's original order to "cuff up" at Plaintiff's cell door, Defendant Nushardt placed his shield on Plaintiff's back until restraints were placed on Plaintiff. *Id.* ¶¶ 33-34. Defendants maintain that Defendant Nushardt's use of his shield was due to concerns about the "safety of staff and himself" and not borne of animus against Plaintiff. *Id.* ¶ 34.

## 2. Plaintiff's Placement on Suicide Watch

Mental health professionals at Stateville evaluate inmates on hunger strikes for their mental and emotional wellbeing. Mental Health Defs.' Rule 56.1 Statement of Facts [146] ¶ 16. Plaintiff was a patient on Defendant Wilson's case load, and Defendant Wilson would evaluate Plaintiff every few days. *Id.* ¶ 17. After the attempted force feed on March 7, 2013, Defendant Wilson interviewed Plaintiff. *Id.* ¶ 20.

Mental Health Defendants allege that, upon arrival, Defendant Wilson found Plaintiff "punching and kicking the door in his cell and threatening staff." Mental Health Defs.' Rule 56.1 Statement of Facts [146] ¶ 22. Mental Health Defendants also claim that Plaintiff was, volatile, aggressive, and uncooperative with Defendant Wilson's crisis assessment. *Id.* Plaintiff denies these claims. Pl.'s Resp. to Mental Health Defs.' Rule 56.1 Statement of Facts [155] ¶ 22. State Defendants further allege that, prior to Defendant Wilson's arrival, Plaintiff informed Defendant Pounovich that he wanted to "cut himself." State Defs.' Rule 56.1 Statement of Facts [141] ¶ 42. Plaintiff denies this allegation, and alleges that Defendant Pounovich provided this false information to Defendant Wilson in retaliation for

Plaintiff's hunger strike. Pl.'s Resp. to State Defs.' Rule 56.1 Statement of Facts [159] ¶¶ 42-43. Mental Health Defendants claim that, due to Plaintiff's behavior and statements to Defendants Wilson and Pounovich, Defendant Wilson decided to place Plaintiff on suicide watch. Mental Health Defs.' Rule 56.1 Statement of Facts [146] ¶ 26.

Mental Health Defendants maintain that the decision to place Plaintiff on suicide watch was made solely by Defendant Wilson. *Id.* In contrast, Plaintiff alleges that Defendants McGarvey and Larry told Defendant Wilson, "we're tired of this shit" and ordered that Plaintiff be placed on suicide watch "in order to break his hunger strike." Pl.'s Rule 56.1 Statement of Additional Facts [159] ¶ 27.

Inmates placed on suicide watch are taken to mental health cells in the infirmary. Mental Health Defs.' Rule 56.1 Statement of Facts ¶ 36. Suicide watch inmates are not permitted to wear clothing because the materials can be used for self-harm. *Id.* As a result, Plaintiff was strip searched after he was placed on suicide watch. Pl.'s Rule 56.1 Statement of Additional Facts [159] ¶ 31. Plaintiff alleges that, contrary to Stateville standard operating procedure, Defendant Rivera—a female—viewed and video-recorded this strip-down process. *Id.*

Defendant Kartan evaluated Plaintiff on March 9 and 10, 2013. Mental Health Defs.' Rule 56.1 Statement of Facts [146] ¶ 41. Mental Health Defendants claim that Defendant Kartan noted that Plaintiff was "easily irritable, became easily agitated and remained unpredictable." *Id.* ¶ 42. Plaintiff denies these claims. Pl.'s Resp. to Mental Health Defs.' Rule 56.1 Statement of Facts [155] ¶ 42.

Regardless, Defendant Kartan determined that Plaintiff's suicide watch should continue. Mental Health Defs.' Rule 56.1 Statement of Facts [146] ¶ 42. Plaintiff alleges that this determination was made in order to further retaliate against Plaintiff's grievances and hunger strike. First Am. Compl. ¶ 111.

### E.    Plaintiff's Transfer

On March 11, 2013, Plaintiff was transferred to Pontiac Correctional Center.[2] Mental Health Defs.' Rule 56.1 Statement of Facts [146] ¶ 47. Plaintiff claims that Defendants Gomez and Lemke ordered Plaintiff's transfer as continued retaliation against Plaintiff. First Am. Compl. [161] ¶ 70.

## II.    Legal Standard

"Summary judgment is designed to head off a trial if the opposing party 'does not have a reasonable prospect of prevailing before a reasonable jury—that is, a jury that will base its decision on facts and the law, rather than on sympathy or antipathy or private notions of justice.'" *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 338 (7th Cir. 1991) (quoting *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989)). Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Burnell v. Gates Rubber Co.*, 647 F.3d 704, 708 (7th Cir. 2011). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In making a summary judgment

---

[2] Following his transfer, Plaintiff's hunger strike continued until April 25, 2013. Mental Health Defs.' Rule 56.1 Statement of Facts [146] ¶ 47.

determination, the Court must "construe all facts and reasonable inferences in favor of the non-moving party." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 653 (7th Cir. 2010).

## III. Analysis

State Defendants base their summary judgment motion on the following arguments: (1) this Court lacks supplemental jurisdiction over Counts I and VIII as they relate to Defendants Combs, Egan and Rivera; (2) Counts I-III and VIII are barred by the doctrine of sovereign immunity; (3) Plaintiff's excessive force claim (Count VI) fails because Defendant Nushardt's actions on March 7, 2013 constituted "*de minimis*" force and a "good-faith effort to maintain and restore discipline"; (4) Plaintiff's failure to protect claim (Count VII) fails because Plaintiff cannot show that his prison conditions posed a "substantial risk of serious harm" or that State Defendants acted with "deliberate indifference"; (5) there is insufficient evidence to support Plaintiff's intentional infliction of emotional distress claims (Counts I, II, and VIII); and (6) Plaintiff's retaliation claims (Counts IV, V, and IX) fail because Plaintiff cannot adequately show: (a) that Plaintiff was engaged in an activity protected by the First Amendment; (b) that Plaintiff suffered a deprivation that would likely deter First Amendment activity in the future; or (c) that Plaintiff's alleged First Amendment activity was a motivating factor in Defendant's alleged retaliatory action. State Defs.' Mem. Supp. Summ. J. [140]. Each argument will be addressed in turn.

Mental Health Defendants base their summary judgment motion on the same grounds as State Defendants as it relates to Plaintiff's intentional infliction of emotional distress and retaliation claims. Therefore, Mental Health Defendants' arguments will be addressed in conjunction with those of State Defendants.

### A.   Supplemental Jurisdiction

State Defendants first argue that some of Plaintiff's claims for intentional infliction of emotional distress (Counts I and VIII) – specifically as they relate to Defendants Combs, Egan, and Rivera – fall outside the Court's supplemental jurisdiction, because the claims "share no common facts with [Plaintiff's] § 1983 claims, which are the basis for the Court's original jurisdiction."[3] State Defs.' Mem. Supp. Summ. J. [140] 4-5; *see* 28 U.S.C. § 1331 ("[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). According to State Defendants, Defendants Combs, Egan, and Rivera "are not implicated by any of Plaintiff's § 1983 claims" and therefore "have nothing to do with the substance of his § 1983 claim[s]." *Id.*

The Court finds State Defendants' argument unconvincing. Under 28 U.S.C. § 1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Claims form part of the same case or controversy when they "derive from a common nucleus of operative fact." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 (7th Cir. 1999) (quoting *City of Chicago v. International*

---

[3] State Defendants do not challenge this Court's jurisdiction over Plaintiff's 42 U.S.C. § 1983 claims.

*College of Surgeons*, 522 U.S. 156, 164–65 (1997)).  To satisfy this requirement, "a loose factual connection between the claims is generally sufficient."  *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 683 (7th Cir.), *reh'g denied*, 769 F.3d 535 (7th Cir. 2014) (quoting *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)).

### 1.    Count I

| Count I | |
|---|---|
| **Cause of Action** | **Relevant Named Defendant(s)** |
| Intentional Infliction of Emotional Distress | 1.  Combs |
| | 2.  Egan |

In Count I, Plaintiff alleges that, on February 4, 2013, Defendants Combs and Egan intentionally inflicted emotional distress on Plaintiff when they "took a substantial portion of Plaintiff's personal property," "taunted" him, and told him that his belongings were "going in the trash."  First Am. Compl. [61] ¶ 34.

In Count IV, one of Plaintiff's two § 1983 claims, Plaintiff alleges that "in retaliation" for Plaintiff filing grievances and engaging in a constitutionally protected hunger strike, "Defendants Gomez [and] Lemke . . . took adverse action against Plaintiff."  *Id*. ¶¶ 88-89.   Specifically, Plaintiff claims that as Deputy Director of the Northern Division of IDOC and Warden of Stateville, "Defendants Gomez and Lemke *ordered* the wrongful conduct against Plaintiff and engaged in a conspiracy with the other Defendants to 'break' the Plaintiff by any means necessary."  State Defs.' Rule 56.1 Statement of Facts [141] ¶¶ 2, 4, 33 (emphasis added).

Plaintiff further states that, on February 4, 2013, immediately after he complained to Defendants Gomez and Lemke about Plaintiff's treatment at the hands of the tactical team, Plaintiff was "wrongfully mistreated by Defendants Egan and Combs." *Id*. ¶ 34. From these facts, in can be reasonably inferred that Plaintiff's alleged mistreatment by Defendants Combs and Egan was part of the wrongful conduct allegedly ordered by Defendants Gomez and Lemke. In other words, some of the retaliatory acts allegedly ordered by Defendants Gomez and Lemke in Count IV were the same acts allegedly performed by Defendants Combs and Egan in Count I. As such, Counts I and IV share a common nucleus of operative facts and are thus part of the same case or controversy for the purposes of 28 U.S.C. § 1367. Therefore, State Defendants' motion as to Count I and Defendants Combs and Egan is denied.

2.     **Count VIII**

| Count VIII | |
|---|---|
| **Cause of Action** | **Relevant Named Defendant(s)** |
| Intentional Infliction of Emotional Distress | 1.  Rivera |

Similarly, in Count IV, Plaintiff alleges that on March 7, 2013, as retaliation for Plaintiff's hunger strike, Defendant Wilson placed Plaintiff on suicide watch "without a proper basis for doing so." First Am. Compl. [61] ¶ 54. Plaintiff alleges that, as part of being improperly placed on suicide watch, he was forced to "strip naked" so that he "could be placed in a stripped out cell." *Id*. ¶ 55. In Count VIII, Plaintiff alleges that Defendant Rivera viewed and video-recorded this strip-down process in order to inflict emotional distress on Plaintiff. First Am. Compl. [61] ¶¶

55, 59-60.  Once again, as with Count I, the retaliatory conduct allegedly ordered by Defendant Wilson in Count IV led to the misconduct allegedly committed by Defendant Rivera in Count VIII.  Therefore, Counts IV and VIII share a common nucleus of operative facts and are thus part of the same case or controversy.  Thus, on this issue, State Defendants' motion as to Count VIII and Defendant Rivera is denied.

### B.    Sovereign Immunity

Next, State Defendants claim that Plaintiff's state law tort claims for intentional infliction of emotional distress (Counts I, II, and VIII) and negligent supervision (Count III) are barred by the doctrine of sovereign immunity.  State Defs.' Mem. Supp. Summ. J. [140] 5.

The Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit . . . commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Although the express terms of the Eleventh Amendment "do not say as much, the Supreme Court long ago held that a citizen of a state may not bring an action against his own state in federal court."  *Gossmeyer v. McDonald*, 128 F.3d 481, 487 (7th Cir. 1997).  Moreover, both the Supreme Court and the Seventh Circuit have held that "the Eleventh Amendment bars an action in federal court against a state, its agencies, or its officials in their official capacity."  *Id.*

The Eleventh Amendment, however, does *not* bar a suit against a state official in his or her *individual* capacity. *Id.* This is so because "when a state officer deprives an individual of a federal constitutional right, that official 'comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." *Trotter v. Klincar*, 566 F. Supp. 1059, 1064 (N.D. Ill. 1983), *aff'd,* 748 F.2d 1177 (7th Cir. 1984) (quoting *Ex Parte Young,* 209 U.S. 123, 159-60 (1908)).

These principles notwithstanding, a claim against an individual in his or her individual capacity "will nonetheless be considered a claim against the state of Illinois," if "judgment for the plaintiff could operate to control the actions of the State or subject it to liability." *Liebich v. Hardy*, No. 11 C 5624, 2013 WL 4476132, at *11 (N.D. Ill. Aug. 19, 2013) (quoting *Loman v. Freeman*, 890 N.E.2d 446, 453 (Ill. 2008)). An agent's conduct will be attributed to the State for purposes of sovereign immunity if: (1) there are no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State. *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001) (quoting *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990)).

Here, Plaintiff makes claims against the State Defendants named in Counts I, II, III, and VIII in their *individual* capacities.

### 1. Counts I, II, and VIII

| Count I | |
|---|---|
| **Cause of Action** | **Relevant Named Defendant(s)** |
| Intentional Infliction of Emotional Distress | 1. Combs<br>2. Egan |
| **Count II** | |
| **Cause of Action** | **Relevant Named Defendant(s)** |
| Intentional Infliction of Emotional Distress | 1. Gomez<br>2. Lemke |
| **Count VIII** | |
| **Cause of Action** | **Relevant Named Defendant(s)** |
| Intentional Infliction of Emotional Distress | 1. Larry<br>2. McGarvey<br>3. Pounovich<br>4. Rivera<br>5. Wilson |

Construing all facts and reasonable inferences in Plaintiff's favor, the conduct of Defendants named in Counts I, II, and VIII cannot be sufficiently attributed to the State for the purposes of sovereign immunity. First, Plaintiff adequately demonstrates that the State Defendants named in Counts I, II, and VIII allegedly acted beyond the scope of their respective authority. An act is considered within the scope of an employee's authority when "it is of the general kind he is authorized to perform, and is motivated, at least in part, by a purpose to serve the principal." *Richman*, 270 F.3d 430, 442 (7th Cir. 2001).

First, regarding Counts I and II, the parties agree that Stateville procedures allow inmates on segregation status to possess only limited property, State Defs.' Rule 56.1 Statement of Facts [141] ¶ 25, and authorize correctional officers to move

16

excess property from an inmate's private cell to the prison's "property room." Pl.'s Rule 56.1 Statement of Additional Facts [159] ¶ 17. However, Plaintiff alleges that Defendants Combs, Egan, Gomez, and Lemke acted beyond this authority by directly or indirectly throwing Plaintiff's personal property *in the trash*. First Am. Compl. [61] ¶¶ 33-34.

Similarly, regarding Count VIII, the parties agree that Stateville may place inmates on suicide watch to prevent prisoners from engaging in self-harm. State Defs.' Rule 56.1 Statement of Facts [141] ¶ 38. However, Plaintiff alleges that Defendants Larry, McGarvey, Pounovich, and Wilson acted beyond this authority by placing Plaintiff on suicide watch in order to retaliate against his grievances and "break" his hunger strike. First Am. Compl. [61] ¶ 54. Likewise, Stateville policies prohibit female presence or videotaping during a male inmate strip-down. Pl.'s Rule 56.1 Statement of Additional Facts [159] ¶ 31; Pl.'s Rule 56.1 Statement of Additional Facts [159] Attach. J. at 41:21-42:20. Plaintiff alleges that Defendant Rivera violated this guideline with her actions on March 7, 2013. First Am. Compl. [61] ¶¶ 55, 59-60.

Second, for each of Counts I, II, and VIII, Plaintiff indicates that Defendants acted not by a purpose to serve Stateville, *see Richman*, 270 F.3d at 442, but rather with the specific intent to inflict "severe emotional distress on Plaintiff." First Am. Compl. ¶¶ 77, 81, 107.

Finally, sovereign immunity applies only where the duty alleged to have been breached "is imposed solely by virtue of the individual's employment with the

state." *Sweeney v. Burras*, No. 12 C 564, 2014 WL 1018190, at *7 (N.D. Ill. Mar. 16, 2014) (quoting *Fritz v. Johnston*, 209 Ill. 2d 302, 309 (2004)). In *Sweeney*, the plaintiff, in conjunction with § 1983 claims, sued two Chicago State University police officers for state law claims of malicious prosecution, intentional infliction of emotional distress, battery, and assault. *Id*. at *1. Arguing that they acted "exclusively pursuant [to] their duties as police officers for a state university," the defendants invoked sovereign immunity for all of the plaintiff's state law claims and moved for summary judgment. *Id*. at *7-8. Denying the defendants' motion, the court emphasized that the issue of whether a claim against a state employee is considered a claim against the State "does not depend simply on whether the employee was acting within the scope of his employment when he committed the act in question." *Id*. at *7 (quoting *Fritz*, 209 Ill. 2d at 310). Rather, "it turns on the source of the duty the employee is claimed to have breached." *Id*. The court found that the duties at issue in the plaintiff's state law claims were "not specific to their state employment." *Id*. at *8.

Here, as in *Sweeney*, the duty forming the basis of Counts I, II, and VIII—the duty not to intentionally inflict emotional distress on others—is "owed to the public generally" and "independent of" State Defendants' state employment. *Richman*, 270 F.3d at 441. Therefore, on this issue, State Defendants' motion as to Counts I, II, and VIII is denied.

### 2. Count III

| Count III | |
|---|---|
| **Cause of Action** | **Relevant Named Defendant(s)** |
| Negligent Supervision | 1. Gomez<br>2. Lemke |

In contrast to Counts I, II, and VIII, the conduct alleged in Count III cannot be sufficiently separated from Defendants' state employment. Under Illinois law, in a cause of action for negligent supervision, the plaintiff must establish that: (1) the employer had a duty to supervise its employee; (2) the employer negligently supervised its employee; and (3) such negligence proximately caused the plaintiff's injuries. *Lansing v. Sw. Airlines Co.*, 980 N.E.2d 630, 634 (Ill. App. Ct. 2012).

In Count III, Plaintiff does not allege that Defendants Gomez and Lemke acted "beyond the scope" of their authority through wrongful acts. *See Richman*, 270 F.3d at 441. To the contrary, Plaintiff alleges that, by "negligently supervis[ing] Defendants Egan and Combs," Defendants Gomez and Lemke failed to even act *within* the scope of their authority as Deputy Director of the Northern Division of IDOC and Warden of Stateville, respectively. First Am. Compl. ¶ 85.

Furthermore, although Plaintiff alleges that "Defendants Gomez and Lemke had a duty to supervise Defendants Egan and Combs," *id*. ¶ 84, this duty derived *solely* from Defendants Gomez and Lemke's state employment. First Am. Compl. ¶¶ 7-8, 84. That is, Defendants Gomez and Lemke possessed no supervisory responsibility over Defendants Combs and Egan absent their respective state positions. Returning to the principle promulgated in *Sweeney*, the Court's analysis "turns on the source of the duty the employee is claimed to have breached."

*Sweeney*, 2014 WL 1018190, at *7. Here, Defendants Gomez and Lemke's duty to supervise was not "owed to the public generally," but rather wholly dependent on "Defendants' state employment." *Richman*, 270 F.3d at 441.

Finally, the complained-of actions in Count III involve matters ordinarily within Defendants Gomez and Lemke's "normal and official functions of the State." *Id.* As Warden of Stateville, Defendant Lemke's responsibilities included "overall operations of the facility," including "programs, operations, clinical, medical, [and] budgetary." State Defs.' Rule 56.1 Statement of Facts [141] Attach. 10 at 9:12-16. Defendant Lemke "oversaw all employees that worked for the facility," including Defendants Combs and Egan. *Id.* at 10:19-20. Similarly, as Deputy Director of the Northern Division of IDOC, Defendant Gomez served as "the warden's boss" and ensured that "policies and procedures [were] followed." Pl.'s Rule 56.1 Statement of Additional Facts [159] Attach. 12 at 7:11-17, 8:5.

In short, the alleged conduct of Defendants Gomez and Lemke in Count III can be attributed to the State. Therefore, the doctrine of sovereign immunity applies, and State Defendants' motion as to Count III is granted.[4]

---

[4] Given this ruling, the Court need not address State Defendants' alternative argument that "Plaintiff has not presented evidence that Combs and Egan were unfit to act as correctional officers." State Defs.' Mot. Summ. J. [140] 15.

### C.    "*De Minimis*" Force and "Good Faith Effort" to Maintain and Restore Discipline

| Count VI | |
|---|---|
| **Cause of Action** | **Relevant Named Defendant(s)** |
| Excessive Force Pursuant to 42 U.S.C. § 1983 | 1.  Nushardt |

Next, State Defendants' claim that Plaintiff's excessive force claim (Count VI) fails because Defendant Nushardt's actions on March 7, 2013 constituted "*de minimis*" force and a "good-faith effort to maintain and restore discipline."  State Defs.' Mem. Support Mot. Summ. J. [140] 12-13.  The Court disagrees.

The "'unnecessary and wanton infliction of pain' on a prisoner violates his rights under the Eighth Amendment." *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)).  However, the Eighth Amendment "does not forbid every use of force against a prisoner." *Mitchell v. Krueger*, 594 F. App'x 874, 876 (7th Cir. 2014); *id.* ("not every 'malevolent touch' by a security officer, however, implicates the Constitution") (quoting *Hudson v. McMillian,* 503 U.S. 1, 5 (1992)).  The "use of *de minimis* force, so long as it 'is not of a sort repugnant to the conscience of mankind,' is not of Eighth Amendment concern." *Lewis*, 581 F.3d at 475 (quoting *Hudson*, 503 U.S. at 9-10).

Thus, this Court must conduct a two-part inquiry.  First, it must determine "whether the force that [Plaintiff] describes rose above the *de minimis* level and thus potentially amounted to an Eighth Amendment violation." *Fillmore v. Page,* 358 F.3d 496, 504 (7th Cir. 2004).  If the force applied is more than *de minimis,* the Court must then determine whether it "was applied in a good-faith effort" to

maintain or restore discipline, or "maliciously and sadistically" to cause harm, punish, or humiliate Plaintiff. *Id.*; *Hudson*, 503 U.S. at 7. Relevant factors for this inquiry include "the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner." *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). Regarding the last factor, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Hudson*, 503 U.S. at 4. "[P]ain, not injury, is the barometer by which" the Court conducts its analysis. *Lewis*, 581 F.3d at 475.

### 1. *"De Minimis"* Force

Here, Plaintiff alleges that when Defendant Nushardt entered Plaintiff's cell on March 7, 2013, Defendant Nushardt "slammed" his shield down "as hard as he could" on Plaintiff's right pinkie finger. First Am. Compl. [61] ¶ 47; State Defs.' Rule 56.1 Statement of Facts [141] Attach. 1 at 112:16-19, 113:12-17, 114:14-15. Moreover, the parties agree that Plaintiff "screamed out in pain" when Defendant Nushardt placed his shield on Plaintiff's back and hand. Pl.'s Rule 56.1 Statement of Additional Facts [159] ¶ 26. At their depositions, Plaintiff and Defendant Nushardt also testified that Plaintiff let the tactical team "know they had re-broke" his finger. Pl.'s Rule 56.1 Statement of Additional Facts [159] Attach. 1 at 113:19-20, Attach. 11 at 30:22. Again, construing the facts in the light most favorable to

Plaintiff, this is sufficient to infer that the force used by Defendant Nushardt was more than *de minimis*.

## 2. "Good Faith Effort" to Restore Discipline

Nevertheless, Defendants argue that the force used by Defendant Nushardt constituted a good faith effort to "maintain order in the prison when the Plaintiff refused direct orders to cuff up." State Defs.' Mem. Supp. Mot. Summ. J. [140] 12. Defendants claim that when Plaintiff failed to comply with the tactical team's order to "cuff up" at his cell door, Defendant Nushardt placed his shield on Plaintiff's back until he was placed in restraints. *Id.* ¶¶ 32-34. Given this context, Defendants maintain that Defendant Nushardt's use of his shield was due to concerns about the "safety of staff and himself." *Id.* ¶ 34; State Defs.' Mem. Supp. Mot. Summ. J. [140] Attach. 11 at 33:18-19.

Plaintiff, however, contradicts State Defendants' version of events. Contrary to Stateville procedures, Plaintiff claims that he never received an order to "cuff up" at his cell door. Instead, upon Defendant Nushardt's arrival at Plaintiff's cell, Defendant Nushardt immediately ordered Plaintiff to lie on the bed and put his hands behind his back. Pl.'s Rule 56.1 Statement of Additional Facts [159] ¶¶ 22-23. Plaintiff claims that even though he complied with this order, Defendant Nushardt approached and, without cause, purposely slammed his shield on Plaintiff's hand and back, intending to harm Plaintiff. *Id.* ¶ 25.

Plaintiff further alleges that, at the time, his right pinkie finger was wrapped in gauze due to his previous injury. First Am. Compl. [61] ¶ 47. Defendant

Nushardt admitted that Plaintiff "might have" had an injured finger and that he observed "some kind of wrapping on it" when he entered his cell. State Defs.' Mem. Supp. Mot. Summ. J. [140] Attach. 11 at 29:21-30:3. Given these facts, Plaintiff infers that Defendant Nushardt "knew that Plaintiff's hand was injured" at the time Defendant Nushardt allegedly assaulted Plaintiff with his shield. Pl.'s Rule 56.1 Statement of Additional Facts [159] ¶ 24. Plaintiff buttresses this inference by alleging the tactical team "cursed at," "threatened," and "taunted" Plaintiff throughout the altercation. Pl.'s Rule 56.1 Statement of Additional Facts [159] Attach. 1 at 114:1-5.

For the purposes of summary judgment, this Court must construe all facts and reasonable inferences in the light most favorable to Plaintiff. Hence, this Court must accept as true, at this stage of the proceedings, Plaintiff's claims that: (1) Defendant Nushardt never ordered Plaintiff to "cuff up" near the cell door; (2) Plaintiff immediately complied with Defendant Nushardt's alternative order to lay on the bed and put his hands behind his back; (3) Defendant Nushardt knew Plaintiff's finger was injured; (4) Defendant Nushardt "slammed" his shield onto Plaintiff's hand "as hard as he could"; and (5) the remaining tactical team "cursed at," "threatened," and "taunted" Plaintiff. Based upon these claims, a reasonable fact finder could conclude that Defendant Nushardt's actions were unnecessary to maintain order or restore discipline, and instead constituted a wanton infliction of pain on Plaintiff. *See Hope v. Pelzer,* 536 U.S. 730, 738 (2002) (shackling inmate to hitching post was "obvious" Eighth Amendment violation if, as inmate alleged, his

threat to guards' safety had abated); *Mitchell*, 594 F. App'x at 877. Therefore, State Defendants' motion as to Count VI is denied.

### D. "Substantial Risk of Serious Harm" and "Deliberate Indifference"

| Count VII | |
|---|---|
| **Cause of Action** | **Relevant Named Defendant(s)** |
| Failure to Protect Pursuant to 42 U.S.C. § 1983 | 1. Gomez<br>2. Lemke |

State Defendants next argue that Plaintiff's failure to protect claim (Count VII) fails because Plaintiff cannot show that his prison conditions posed a "substantial risk of serious harm" or that State Defendants acted with "deliberate indifference." Defs.' Mem. Supp. Mot. Summ. J. [140] 10-11.

Just as "prison officials have a duty to protect prisoners from violence at the hands of other prisoners," *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotations omitted), an inmate has a constitutional right to be "secure in her bodily integrity and free from attack by prison guards." *Castillo v. Day*, 790 F.3d 1013, 1018 (10th Cir. 2015). However, a prison official cannot be liable for "denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Thus, a claim that a prison official "was deliberately indifferent to such a risk has both an objective and a subjective component." *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). To succeed on a failure to protect claim, Plaintiff must prove that: (1) he was incarcerated under conditions posing a substantial risk of serious

harm; and (2) Defendant-officials acted with deliberate indifference to that risk. *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005) (quoting *Farmer*, 511 U.S. at 832).

### 1.    "Substantial Risk of Serious Harm"

To satisfy the first, objective prong, "a plaintiff must allege not only that he or she experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that that serious harm might actually occur." *Brown*, 398 F.3d at 910. As to the alleged harm suffered, "'the deprivation alleged must be objectively, sufficiently serious,' amounting to a 'denial of the minimal civilized measure of life's necessities.'" *Id.* (quoting *Farmer*, 511 U.S. at 843). Ultimately, the question is whether "custodial officials exposed a detainee to a sufficiently substantial risk of *serious damage to his future health*." *Id.* (emphasis in original) (internal quotations omitted).

Regarding exposure to risk, "substantial risk" means a risk "so great that [it is] almost certain to materialize if nothing is done." *Id.* at 911. Such risks include "risks attributable to detainees with known propensities of violence toward a particular individual or class of individuals; to highly probable attacks; and to particular detainees who pose a heightened risk of assault to the plaintiff." *Id.* (internal quotations omitted). In short, the "conditions presenting the risk must be 'sure or very likely to cause . . . needless suffering,' and give rise to 'sufficiently imminent dangers.'" *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008) (Roberts, C.J., plurality opinion)). As the Seventh Circuit describes the concept: "a 'substantial risk' could exist where prison

officials place a detainee in a cell in which 'they know that there is a cobra there or at least that there is a high probability of a cobra there.'" *Brown*, 398 F.3d at 911 (quoting *Billman v. Ind. Dept. of Corr.,* 56 F.3d 785, 788 (7th Cir. 1995)).

Here, Plaintiff adequately shows a "serious harm." The Seventh Circuit has consistently found physical assaults to be "sufficiently serious." *See, e.g., Borello v. Allison*, 446 F.3d 742, 745, 748 (7th Cir. 2006) (prisoner-on-prisoner assault with radio); *Budz*, 398 F.3d at 907-08, 910-11 (prisoner "severely beat" by fellow prisoner); *White v. Lindbergh*, No. 12-CV-0769-MJR-SCW, 2015 WL 274943, at *3 (S.D. Ill. Jan. 20, 2015) ("[t]he courts have found that an inmate who is assaulted . . . has experienced a substantially serious harm"); *Griffin v. Spiller*, No. 03-CV-061 DRH, 2007 WL 2802607, at *5 (S.D. Ill. Sept. 24, 2007) ("[b]ecause Plaintiff has demonstrated . . . that he did suffer injuries that were treated by medical personnel, there is a genuine issue of material fact regarding whether Plaintiff was exposed to a substantial risk of serious harm"). In short, being "violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Additionally, while a closer call—and dependent on the Court's obligation to construe all facts and reasonable inferences in Plaintiff's favor—Plaintiff has also established a triable issue regarding the existence of a substantial risk prior to his alleged assault by Defendant Nushardt on March 7, 2013. According to Plaintiff's allegations, the tactical team physically abused him throughout his hunger strike.

Pl.'s Rule 56.1 Statement of Additional Facts [159] ¶ 14; Pl.'s Rule 56.1 Statement of Additional Facts [159] Attach. 1 at 85:24-87:10, 96:13-15; 90:22-91:1, 91:23-92:8. This alleged physical abuse included unnecessarily "grabbing," "pulling," and "jerking" Plaintiff's injured finger, and slamming Plaintiff's head into the wall. *See id*. The record further shows that, at the time Plaintiff complained to Defendants Gomez and Lemke on February 3, 2013, Stateville's use of the tactical team to force feed Plaintiff was likely to continue. At that point, Plaintiff had supposedly persevered in his protest for nearly four months with no end in sight. *See* Pl.'s Rule 56.1 Statement of Additional Facts [159] ¶ 7. During that period, the tactical team was therefore called to force feed Plaintiff more than 50 times. Pl.'s Rule 56.1 Statement of Additional Facts [159] Attach. 1 at 89:1-7. Given the Plaintiff's allegations and the record as a whole, a reasonable fact finder could possibly determine that Stateville tactical team members had "propensities of violence toward a particular individual"—here, Plaintiff—and that further assaults were "almost certain to materialize if nothing [was] done." *Brown*, 398 F.3d at 911.

### 2. "Deliberate Indifference"

Turning to the second, subjective prong, "deliberate indifference" means "subjective awareness." *Riccardo v. Rausch*, 375 F.3d 521, 526 (7th Cir. 2004). That is, "a plaintiff must establish that the official knew of the risk (or a high probability of the risk) and did nothing." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). Thus, "the subjective prong has two subparts: (a) knowledge of the risk and (b) a disregard of that risk." *Arrieta v. Bass*, No. 09C8034, 2010 WL 3404969, at *3

(N.D. Ill. Aug. 26, 2010). A prisoner "normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *McGill v. Duckworth,* 944 F.2d 344, 349 (7th Cir. 1991). Knowledge, however, may also be proven through circumstantial evidence. *Farmer*, 511 U.S. at 843.

Once again construing all facts and reasonable inferences in his favor, Plaintiff has created a triable issue regarding the subjective awareness of the above risk on the part of Defendants Gomez and Lemke. On February 3, 2013, Plaintiff purportedly complained to Internal Affairs that the tactical team slammed Plaintiff's head into the wall during that day's force feed. Pl.s' Rule 56.1 Statement of Additional Facts [159] Attach. 1 at 95:23-96:1 Shortly thereafter, Defendants Gomez and Lemke visited Plaintiff's cell. *Id*. at 95:22-96:6. Given Defendants Gomez and Lemke's high leadership positions (as Deputy Director of the Northern Division of IDOC and Warden of Stateville, respectively), it is reasonable to infer that they visited Plaintiff's cell in response to his complaint to Internal Affairs. During this meeting, Plaintiff allegedly complained to Defendants Gomez and Lemke about the unwarranted physical abuse he suffered at the hands of the tactical team. Pl.'s Rule 56.1 Statement of Additional Facts [159] ¶ 14. Specifically, Plaintiff alleges that he explained to Defendants Gomez and Lemke "that the Tac Team had been physically and emotionally abusing [him] throughout the duration of his hunger strike." Pl.'s Rule 56.1 Statement of Additional Facts [159] Attach. 1 at 96:12-15. Plaintiff further told Defendants Gomez and Lemke that he "feared for

[his] safety and [he] wish[ed] they would . . . do something to ensure that . . . the Tac Team didn't continue to do what they were doing." *Id*. at 97:2-5. On February 4, 2013, after Defendants Combs and Egan allegedly taunted Plaintiff and threw his personal items in the trash, Plaintiff issued *another* emergency grievance to Defendant Gomez. *Id*. 136:15-20.

Considering these facts together, it is reasonable to infer that Defendants Gomez and Lemke were aware of a substantial risk that the tactical team was operating outside the bounds of accepted procedure and inflicting unnecessary physical and emotional harm on Plaintiff. In other words, these facts are sufficient to show that Defendants Gomez and Lemke "knew of the risk (or a high probability of the risk) and did nothing." *Pope*, 86 F.3d at 92. State Defendants' claim that Plaintiff failed to put Defendants on notice of a specific risk of excessive force by *Nushardt* misses the point. The deliberate indifference standard does not require actual knowledge "of an *individualized* threat." *Washington v. LaPorte Cty. Sheriff's Dep't*, 306 F.3d 515, 518 (7th Cir. 2002) (emphasis added).

### E. Intent to Inflict Severe Emotional Distress

| Count I | |
| --- | --- |
| **Cause of Action** | **Relevant Named Defendant(s)** |
| Intentional Infliction of Emotional Distress | 1. Combs<br>2. Egan |
| **Count II** | |
| **Cause of Action** | **Relevant Named Defendant(s)** |
| Intentional Infliction of Emotional Distress | 1. Gomez<br>2. Lemke |
| **Count VIII** | |
| **Cause of Action** | **Relevant Named Defendant(s)** |
| Intentional Infliction of Emotional Distress | 1. Larry<br>2. McGarvey<br>3. Pounovich<br>4. Rivera<br>5. Wilson |

Under Illinois law, a plaintiff may recover damages for intentional infliction of emotional distress if he establishes that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress; and (3) the defendant's conduct did cause severe emotional distress. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604-05 (7th Cir. 2006).

Here, both State Defendants and Mental Health Defendants attack the second prong of Plaintiff's *prima facie* case and claim that no Defendants "intentionally took any action intended or likely to harm Plaintiff emotionally." Defs.' Mem. Supp. Mot. Summ. J. [140] 14; Mental Health Defs.' Mem. Supp. Summ. J. [147] 9-10.

### 1. Defendants Combs, Egan, Larry, McGarvey, and Wilson

Regarding Defendants Combs, Egan, and McGarvey, State Defendants' merely cite their own disputed version of the facts:

> McGarvey activated the tactical team pursuant to requests from medical staff, and was not involved in the determination to place Plaintiff on suicide watch . . . Egan and Combs simply removed excess property pursuant to departmental policy.

Defs.' Mem. Supp. Mot. Summ. J. [140] 14. Similarly, according to Mental Health Defendants, "Defendants Larry and Wilson responded appropriately when attempting to conduct crisis assessment." Mental Health Defs.' Mem. Supp. Summ. J. [147] 10.

Defendants' arguments are unavailing, because Defendants' factual claims are directly contested by Plaintiff. Contrary to State Defendants' claim, Plaintiff avers that Defendant McGarvey played a direct role in placing Plaintiff on suicide watch. Plaintiff testified that he heard Defendants McGarvey and Larry tell Defendant Wilson, "we're tired of this shit" and ordered that Defendant Wilson "put [Plaintiff's] ass on suicide watch" in order to break his hunger strike. Pl.'s Rule 56.1 Statement of Additional Facts [159] Attach. 1 at 63:1-64:2.

Additionally, Plaintiff claims that Defendants Combs and Egan went beyond the simple removal of excess property and instead made disrespectful comments about Plaintiff's family while they threw his personal items in the trash. *Id.* at 100:3-104:11.

Finally, Plaintiff maintains that no legitimate basis existed for Defendants Larry and Wilson to place Plaintiff on suicide watch. Plaintiff denies that he ever

exhibited suicidal ideations, or that he was aggressive, punched or kicked the door of his cell, or threatened staff. Pl.'s Resp. to Mental Health Defs.' Rule 56.1 Statement of Facts [155] Attach. 1 at 67:1-3, Attach. 7 ¶ 5-6. Likewise, Plaintiff denies that he ever informed Defendant Pounovich that he wanted to harm himself. *Id.* at 149:5-150:12.

Taking Plaintiff's version of events as true, as this Court must, these facts could allow a reasonable fact finder to infer that these Defendants either intended to inflict severe emotional distress or knew that there was a high probability of doing so. Therefore, Defendants' motions as they relate to Counts I and VIII and Defendants Combs, Egan, Larry, McGarvey, and Wilson are denied.

### 2. Defendants Gomez, Lemke, Pounovich, and Rivera

Plaintiff's evidence falls short, however, as it relates to Defendants Gomez, Lemke, Pounovich, and Rivera. Plaintiff alleges that Defendants Gomez and Lemke ordered the conduct committed by Defendants Combs and Egan on February 4, 2013. First Am. Compl. ¶ 33. The record, however, is devoid of evidence that such an order occurred. During their depositions, neither Defendant Gomez nor Defendant Lemke recalled having conversations with Defendants Combs and Egan about Plaintiff's hunger strike. Pl.'s Rule 56.1 Statement of Additional Facts [159] Attach. 12 at 33:1-33:13; State Defs.' Rule 56.1 Statement of Facts [141] Attach. 1 at 22:6-22:16, 53:1-53:4. To the contrary, Defendant Combs flatly denied speaking with Defendants Gomez and Lemke about Plaintiff. State Defs.' Rule 56.1 Statement of Facts [141] Attach. 4 at 41:17-41:22.

Plaintiff also alleges that Defendants Gomez and Lemke ordered Plaintiff's transfer to Pontiac Correctional Center on March 11, 2013. First Am. Compl. [161] ¶ 70. Once again, the record betrays Plaintiff's claim. Defendant Gomez testified that a transfer coordinator located in Springfield, Illinois, not Defendant Gomez, decides "the appropriate placement" for an offender. Pl.'s Rule 56.1 Statement of Additional Facts [159] Attach. 12 at 34:16-24. Furthermore, both Defendants Gomez and Lemke either denied, or could not recall, being a part of Plaintiff's transfer. *Id.* at 33:2-3; Pl.'s Resp. to State Defs.' Mot. Summ. J. [157] Attach. 10 at 46:23-47-22. In fact, at the time of their depositions, neither Defendant Gomez nor Defendant Lemke could recall whether a transfer ever took place. Pl.'s Resp. to State Defs.' Mot. Summ. J. [157] Attach. 12 at 32:8-10, Attach. 10. at 46:2-4. Plaintiff fails to present any evidence to combat these declarations. Plaintiff cannot create a "triable dispute of fact" if his only evidence is that Defendant's witnesses are "not worthy of belief." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 815 (7th Cir. 2005).

Regarding Defendant Pounovich, Plaintiff maintains that he never expressed suicidal ideations, either to Defendant Pounovich or any other Stateville staff member. Pl.'s Resp. to Mental Health Defs.' Rule 56.1 Statement of Facts [155] Attach. 1 at 67:1-3. According to Plaintiff, this fact calls into question Defendant Pounovich's statement to Defendant Wilson that Plaintiff "reported to [Stateville] staff that he wanted to cut himself." Pl.'s Rule 56.1 Statement of Additional Facts [159] Attach. 16. However, even assuming that Plaintiff did *not* make such a report

merely leaves this Court with a single innocuous conclusion: that Defendant Pounovich provided incorrect information to Defendant Wilson. Without more (and there is no more here), this fact does not establish that Defendant Pounovich *intentionally* provided a mistaken account of Plaintiff's mental state, or acted with the purpose of inflicting severe emotional distress on Plaintiff. That is, the asserted conflict between Plaintiff and Defendant Pounovich's respective versions of events says nothing of the motive underlying the discrepancy.

Plaintiff infers an ulterior motive due to the supposed "time and resources" that Defendant Pounovich's unit was forced to expend on Plaintiff's hunger strike. Pl.'s Resp. State Defs.' Mot. Summ. J. [157] 1. At her deposition, however, Defendant Pounovich testified that she did not "remember [Plaintiff] specifically" and did not "recall his specific hunger strike." Pl.'s Resp. State Defs.' Mot. Summ. J. [157] Attach. 3 at 29:4-24. Yet, Defendant Pounovich *did* remember that "there were numerous" hunger strikes during her time at Stateville, and that the prison would conduct force feedings "for anybody that was on an extended hunger strike," not just Plaintiff. *Id.* at 31:19-21, 45:9-11. Most importantly, Defendant Pounovich offered no indication that *any* hunger strike—let alone Plaintiff's—created excessive administrative, logistical, or budgetary burdens that might inspire her to retaliate in the manner proffered by Plaintiff. In short, Plaintiff presents insufficient evidence to allow a reasonable fact finder to draw such a nefarious conclusion regarding Defendant Pounovich's intent.

Similarly, although Defendant Rivera acknowledged recording Plaintiff's attempted force feed on March 7, 2013, she denied being present at the time of Plaintiff's strip search. Pl.'s Rule 56.1 Statement of Additional Facts [159] Attach. 15 at 25:5-6, 29:7-9, 38:14-15, 56:6-7, 57:5-7, 66:8-18. Even assuming, *arguendo*, that Defendant Rivera *was* present and recorded Plaintiff's strip search, Plaintiff presents no evidence that Defendant Rivera did so to emotionally injure Plaintiff. Prior to March 7, 2013, Defendant Rivera did not have any interactions with Plaintiff or even know that he was on a hunger strike. *Id.* at 27:14-20. Moreover, unlike the leadership positions held by Defendant Gomez, Lemke, or Pounovich, Defendant Rivera merely served as a Correctional Officer. Thus, Defendant Rivera was even less likely to be motivated by the expenditure of inordinate time and resources supposedly devoted to Plaintiff's hunger strike. Most notably, Defendant Rivera testified that she was unaware of any Stateville policies prohibiting the presence of female correctional officers during male inmate strip searches. *Id* at 55:17-24.

Under the summary judgment standard, this Court construes "all inferences in the non-movant's favor, but he is not entitled to the benefit of inferences that are supported only by speculation or conjecture." *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). Speculation does not "create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995). On this record, it would be unreasonable to infer intent on the part of Defendants Gomez, Lemke,

Pounovich, and Rivera.  Therefore, on this issue, State Defendants' motion as it to Counts II and VIII and these Defendants is granted.

### F.    Retaliation Pursuant to 42 U.S.C. § 1983

| Count IV | |
|---|---|
| **Cause of Action** | **Relevant Named Defendant(s)** |
| Retaliation Pursuant to 42 U.S.C. § 1983 | 1. Gomez<br>2. Lemke<br>3. Larry<br>4. McGarvey<br>5. Pounovich<br>6. Wilson |
| Count V | |
| **Cause of Action** | **Relevant Named Defendant(s)** |
| Retaliation Pursuant to 42 U.S.C. § 1983 | 1. Nushardt |
| Count IX | |
| **Cause of Action** | **Relevant Named Defendant(s)** |
| Retaliation Pursuant to 42 U.S.C. § 1983 | 1. Kartan |

Otherwise "permissible actions by prison officials can become impermissible if done for retaliatory reasons." *Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir. 2000).  An act "taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000).  To prevail on a First Amendment retaliation claim, Plaintiff must show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)) (internal quotations omitted).  Once a plaintiff "demonstrates that an improper purpose was

a motivating factor, the burden shifts to the defendant to show that the same decision would have been made in the absence of the protected speech." *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011). If the defendant "carries that burden, the plaintiff must then demonstrate that the defendant's proffered reasons for the decision were pretextual and that retaliatory animus was the real reason for the decision." *Id.* For the purposes of summary judgment, "this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Id.*

Here, both State and Mental Health Defendants argue that Plaintiff fails to meet any element of a *prima facie* case. Each element will be discussed in turn.

### 1. Protected Activity

First, Defendants argue that there "is no specific guarantee under the First Amendment, or any other constitutional provision that protects inmate hunger strikes." State Defs.' Mem. Supp. Summ. J. [140] 7; Mental Health Defs.' Mem. Supp. Summ. J. [147] 3 ("[Plaintiff] cannot show that he was engaged in an activity protected by the First Amendment"). Defendants overstate the law. As the Supreme Court stated in *Texas v. Johnson*:

> The First Amendment literally forbids the abridgment only of "speech," but we have long recognized that its protection does not end at the spoken or written word. While we have rejected the view that an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea, we have acknowledged that conduct may be sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments.

> In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether an intent to convey a *particularized message* was present, and whether the likelihood was great that the message would be understood by those who viewed it.

491 U.S. 397, 404 (1989) (emphasis added).

Although neither the Supreme Court nor the Seventh Circuit has directly discussed the application of *Texas v. Johnson* to prisoner hunger strikes, the Fifth Circuit took up the issue in *Stefanoff v. Hays County, Tex.* 154 F.3d 523, 527 (5th Cir. 1998). In *Stefanoff*, the plaintiff was denied a discretionary "good time" credit on a 180-day prison sentence. *Id*. at 524-25. In response, the plaintiff brought a § 1983 unlawful retaliation claim, alleging that the denial was based upon the plaintiff exercising his First Amendment rights by engaging in a hunger strike. *Id*. at 525-26. Citing *Texas v. Johnson*, the Fifth Circuit held that "a hunger strike may be protected by the First Amendment if it was intended to convey a particularized message." *Id*. at 527.

District courts in the Second, Fifth, Seventh, and Ninth Circuits have echoed *Texas v. Johnson* and *Stefanoff*. For example, in *Owens v. Atchison*, the *pro se* plaintiff commenced a hunger strike in response to his prison's failure to separate the plaintiff from his allegedly disruptive cellmate. No. 14-CV-00055-JPG, 2015 WL 1404326, at *2 (S.D. Ill. Mar. 24, 2015). The plaintiff alleged that, in response, prison officials retaliated against him by refusing to place him in protective custody and ultimately transferring him to another correctional center. *Id*. Conducting a preliminary review pursuant to 28 U.S.C. § 1915A, the court found that the

plaintiff's hunger strike "appears to be activity protected under the First Amendment." *Id*. at *4 (citing *Texas v. Johnson*, 491 U.S. at 397; *Stefanoff*, 154 F.3d at 527); *see also Dumbrique v. Brunner*, No. 14-CV-02598-HSG, 2016 WL 3268875, at *7 (N.D. Cal. June 15, 2016); *Singleton v. Mississippi Dep't of Corr.*, No. 1:15CV43-LG-RHW, 2016 WL 2869790, at *2 (S.D. Miss. May 17, 2016*), j. entered*, No. 1:15CV43-LG-RHW, 2016 WL 2892506 (S.D. Miss. May 17, 2016); *Mitchell v. Foster*, No. 16-CV-00238-SMY, 2016 WL 2766748, at *4 (S.D. Ill. May 13, 2016); *Hogan v. Prince*, No. CIV.A. 14-138-SDD, 2015 WL 4527683, at *5 (M.D. La. July 27, 2015); *Baird v. Ochs*, No. 15-CV-00261-MJR, 2015 WL 1578127, at *2 n.1 (S.D. Ill. Apr. 2, 2015); *Adkins v. Shinn*, No. CIV. 14-00156 LEK, 2014 WL 2738531, at *4 (D. Haw. June 16, 2014) ("a plausible inference can be made that [the defendant] intended to prevent [the plaintiff] from exercising his First Amendment right to free speech by participating in a hunger strike"); *Brown v. McGinnis*, No. 05-CV-758S, 2012 WL 267638, at *3 (W.D.N.Y. Jan. 30, 2012) (court assumed, for the purposes of evaluating summary judgment motions, "that a hunger strike is protected activity in the context of a retaliation claim"); *Brown v. Graham*, No. 9:07-CV-1353 FJS ATB, 2010 WL 6428251, at *16 (N.D.N.Y. Mar. 30, 2010), *report and recommendation adopted,* No. 9:07-CV-1353 FJS ATB, 2011 WL 1213482 (N.D.N.Y. Mar. 31, 2011), *aff'd,* 470 F. App'x 11 (2d Cir. 2012); *Lee v. Burke*, No. 07-CV-1718, 2007 WL 4608730, at *1 (W.D. La. Dec. 11, 2007), *subsequently dismissed*, 311 F. App'x 700 (5th Cir. 2009).

Defendants' reliance on *Owens v. Hinsley*, 635 F.3d 950 (7th Cir. 2011), is misplaced. *See* State Defs.' Mem. Supp. Summ. J. [140] 7; Mental Health Defs.' Mem. Supp. Summ. J. [147] 4. In *Owens v. Hinsley*, the plaintiff began a hunger strike "to protest what he viewed as indifference to his grievances about [living] conditions." *Id.* at 952. After more than 6 weeks, prison administrators obtained an order from a state court allowing them to force feed Owens. *Id.* In response, Owens filed an action under § 1983 alleging, in relevant part, that "his right to peaceful demonstration was infringed when his second hunger strike was forcibly ended." *Id.* at 953 (internal quotations omitted). The Seventh Circuit affirmed dismissal, holding that "an inmate conducting a hunger strike does not have a constitutionally protected right *to refuse life-saving medical treatment.*" *Id.* at 954 (citing *Freeman v. Berge,* 441 F.3d 543, 546-47 (7th Cir. 2006)) (emphasis added).

*Owens v. Hinsley* is inapplicable to the present case. *Owens* merely addresses whether a prisoner possesses a constitutional right to *refuse life-saving medical treatment* during a hunger strike, not whether a hunger strike *itself* is constitutionally protected. Pl.'s Resp. to State Defs.' Mot. Summ. J. [157] 8 n. 2. Here, Plaintiff's First Amended Complaint does not contend that Defendants violated his rights by force feeding him, a position he reaffirms in his response to Defendants' motions for summary judgment. *See* Pl.'s Resp. to Mental Health Defs.' Mot. Summ. J. [154] 7 ("Plaintiff does not contend that he has a constitutionally protected right to refuse life-saving medical treatment"). Rather, Plaintiff claims that he has a constitutional right to protest his prison conditions "by engaging in a

hunger strike." *Id.* *Owens v. Hinsley* does not speak to this issue. That *Owens v. Atchison, Mitchell v. Foster,* and *Baird v. Ochs*—all Southern District of Illinois cases—were all decided *after Owens v. Hinsley*, yet still confirmed the protection of prisoner hunger strikes, affirms this interpretation.

In distinguishing *Owens v. Hinsley*, this Court, of course, does not find that the First Amendment's protections of a prisoner hunger strike are without limit. The Supreme Court has long held that "reasonable 'time, place and manner' regulations" of communicative activity "may be necessary to further significant governmental interests." *Pell v. Procunier*, 417 U.S. 817, 826 (1974) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 115, (1972)). This principle is no less applicable to inmate hunger strikes, where we must balance a prisoner's freedom of expression with the obvious "security considerations" attendant to the "the involuntary confinement and isolation of large numbers of people, some of whom have demonstrated a capacity for violence," *id.*, and the state's substantial interests in the protection and rehabilitation of inmates. *See Koutnik v. Brown*, 456 F.3d 777, 786 (7th Cir. 2006). Indeed, it is these very concerns that underlie the Seventh Circuit's rationale in *Owens v. Hinsley*.

Nevertheless, for the purpose of Defendants' motions here, this Court need not delineate the precise parameters of protected conduct under the hunger-strike spectrum. It is sufficient to say that, on these facts, Plaintiff's actions are constitutionally protected as to the alleged unreasonable force and purported retaliation. Plaintiff initiated his hunger strike as a specific response to the alleged

lack of medical attention for his broken finger and his receipt of the three disciplinary tickets in August 2012. First Am. Compl. [61] ¶ 7. Further, the misconduct alleged by Plaintiff goes well beyond life-saving medical treatment. Plaintiff maintains that he never "physical fought with the tactical team or medical staff" during force feeds. Pl.'s Rule 56.1 Statement of Additional Facts [159] ¶ 10. As discussed above, despite this alleged peaceful posture, Plaintiff was subjected to repeated physical assaults gratuitous to Stateville's force feeding process. It is untenable to hold that such actions, if true, are "reasonably related to a legitimate penological interest." *Stefanoff*, 154 F.3d at 527 (5th Cir. 1998).

### 2. Deprivation

Defendants next argue that "Plaintiff cannot show that he suffered a deprivation that would likely deter First Amendment activity in the future." Mental Health Defs.' Mem. Supp. Summ. J. [147] 4; State Defs.' Mem. Supp. Summ. J. [140] 8. Once again, Defendants miss the mark. When evaluating the deprivation element, courts consider whether the alleged actions "would deter a person of ordinary firmness from exercising First Amendment activity in the future." *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) (citing *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir.1982)). Since "there is no justification for harassing people for exercising their constitutional rights, the effect of their conduct on freedom of speech need not be great in order to be actionable." *Bennett v. Vill. of Oak Park*, 748 F. Supp. 1329, 1333 (N.D. Ill. 1990) (citing *Bart,* 677 F.2d at 625).

Here, Defendant Nushardt's alleged act of intentionally slamming his shield on Plaintiff's injured hand and back is sufficient to meet this test. *See Zitzka v. Vill. of Westmont*, 743 F. Supp. 2d 887, 917 (N.D. Ill. 2010) (finding defendants' act of forcefully throwing plaintiff against his car prior to arrest sufficient). The alleged act of Defendants McGarvey, Pounovich, Larry, Wilson, and Kartan in impermissibly placing or keeping Plaintiff on suicide watch also satisfies the deprivation standard. *See Reynolds v. Mattson*, No. 2:07-CV-59, 2008 WL 2704750, at *2 (W.D. Mich. July 9, 2008) ("conditions imposed during suicide watch are such that they would deter a person from engaging in protected conduct"). The same goes for Defendants Gomez and Lemke's alleged ordering of the disposal of Plaintiff's personal property and transferring Plaintiff to Pontiac Correctional Center. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (finding that plaintiff suffered deprivation when transferred to new correctional facility); *Adkins v. McClanahan*, No. 1:12CV00034, 2013 WL 942323, at *6 (W.D. Va. Mar. 11, 2013) (a "person of ordinary firmness who had once had his personal property seized in retaliation for exercising his free speech rights would certainly be chilled in exercising those same rights in the future, lest further retaliatory action be taken"); *Albrecht v. Williams*, No. CIV.A. 04-1895 (TJB), 2009 WL 3296649, at *17 (D.N.J. Oct. 13, 2009) ("the threat of having one's personal property destroyed is sufficient to deter a person of ordinary firmness from exercising his or her First Amendment rights").

### 3. Motivating Factor

Finally, Defendants claim that "Plaintiff cannot show that the First Amendment activity was a motivating factor behind any alleged retaliatory action." Mental Health Defs.' Mem. Supp. Summ. J. [147] 5; State Defs.' Mem. Supp. Summ. J. [140] 8. To establish a prima facie case of retaliation, a prisoner must show that a protected activity "was at least a motivating factor in retaliatory action taken against him." *Mays v. Springborn*, 719 F.3d 631, 635 (7th Cir. 2013). That is, Plaintiff must show "a causal link between the protected act and the alleged retaliation." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Roger Whitmore's Automotive Servs., Inc. v. Lake County, Illinois,* 424 F.3d 659, 669 (7th Cir.2005)). Plaintiff need not show that his actions were "the *only* factor that motivated the defendants," but he must show that they were "a motivating factor." *Id.* (emphasis added).

The evidence "used to establish this element may be either direct or circumstantial." *Id.* Direct evidence "is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). To show direct evidence, "a prisoner plaintiff may [produce] evidence of a defendant's comments indicating that the defendant subjected the plaintiff to adverse treatment because of the plaintiff's protected activity." *Johnson v. Kingston*, 292 F. Supp. 2d 1146, 1154 (W.D. Wis. 2003).

Circumstantial evidence, on the other hand, "is evidence from which a trier of fact may infer that retaliation occurred." *Kidwell*, 679 F.3d at 965. Circumstantial evidence may include, among other things, suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other members in the protected group. *Id*. at 966.

### a)    *Defendants Larry, McGarvey, and Wilson*

Construing all facts and reasonable inferences in favor of Plaintiff, a reasonable fact finder could find that Defendants Larry, McGarvey, and Wilson were motivated by a desire to stamp out Plaintiff's hunger strike. At his deposition, Plaintiff testified that on March 7, 2013, immediately before he was placed on suicide watch, he observed Defendant Wilson converse with Defendants Larry and McGarvey. Pl.'s Rule 56.1 Statement of Additional Facts [159] Attach. 1 at 62:19-22. During this conversation, Plaintiff alleges that he overheard Defendant Larry state to Defendant Wilson, "No, put his ass on suicide watch. That's how you get him off his hunger strike." *Id*. at 63:22-24. He further alleges that he heard both Defendants Larry and McGarvey state, "We're tired of this shit," and that their basic statements were for Defendant Wilson to "put [Plaintiff] on suicide watch to break [his] hunger strike." *Id*. at 64:2-6. Additionally, Plaintiff maintains that no legitimate basis existed for placing him on suicide watch. Plaintiff denies that he ever exhibited suicidal ideations, or that he was aggressive, punched or kicked the door of his cell, or threatened staff. Pl.'s Resp. to Mental Health Defs.' Rule 56.1 Statement of Facts [155] Attach. 1 at 67:1-3, Attach. 7 ¶ 5-6. Therefore,

Defendants' motions as they relate to Count IV and Defendants Larry, McGarvey, and Wilson are denied.

### b)      Defendant Nushardt

While a closer call, Plaintiff presents similarly sufficient direct evidence in regards to Defendant Nushardt. Plaintiff testified that during his hunger strike, Defendant Nushardt told Plaintiff that he "better get [his] ass off this fucking hunger strike" because he was "causing a lot of problems." Pl.'s Resp. to Mental Health Defs.' Rule 56.1 Statement of Facts [155] Attach. 1 at 90:1-90:18. As with McGarvey, such evidence supports a reasonable finding that Defendant Nushardt's alleged assault on March 7, 2013 was motivated by Plaintiff's protected activity. Therefore, State Defendants' motion as it relates to Count V and Defendant Nushardt is denied.

### c)      Defendants Gomez, Lemke, Kartan, and Pounovich

In contrast, Plaintiff fails to present sufficient evidence regarding the motivations of Defendants Gomez, Lemke, Kartan, and Pounovich. As discussed in Section III.E.(2) above, there is no evidence that Defendants Gomez and Lemke ordered Defendants Combs and Egan's conduct on February 4, 2013 or Plaintiff's transfer on March 11, 2013, let alone that such orders were motivated by Plaintiff's hunger strike. Similarly, even assuming, as Plaintiff alleges, that Plaintiff never told Defendant Pounovich that he intended to cut himself, Plaintiff fails to show that Defendant Pounovich intentionally fabricated a story to Defendant Wilson *because of* Plaintiff's protected activity.

Plaintiff suffers from the same deficiencies in regards to Defendant Kartan. Plaintiff denies Defendant Kartan's claims that, when Defendant Kartan evaluated Plaintiff on March 9 and 10, Plaintiff was "easily irritable, became easily agitated and remained unpredictable." Mental Health Defs.' Rule 56.1 Statement of Facts [146] ¶ 42. Even if we accept Plaintiff's version of events, however, Plaintiff fails to provide evidence of Defendant Kartan's retaliatory motive. To the contrary, the record indicates that, at the time of Plaintiff's hunger strike, Defendant Kartan only worked weekends at Stateville, and saw Plaintiff on only two occasions. Pl.'s Resp. to Mental Health Defs.' Rule 56.1 Statement of Facts [155] Attach. 5 at 10:16-17, 29:9-12. Moreover, although Defendant Kartan knew in March 2013 that Plaintiff was on a hunger strike, she did not know how long his hunger strike had persisted. *Id.* at 74:11-16. Defendant Kartan never spoke with Defendants Larry, Wilson, Gomez, Lemke, or McGarvey about Plaintiff. *Id.* at 25:12-14, 26:9-12, 65:17-66:4.

In short, when it comes to Defendants Gomez, Lemke, Kartan, and Pounovich, Plaintiff fails to provide "a causal link between the protected act and the alleged retaliation." *Woodruff*, 542 F.3d at 551. Therefore, Defendants' motions as they relate to Count IV and those Defendants are granted.

## IV. Conclusion

In light of the foregoing, Defendants' Motions for Summary Judgment [139] and [145] are granted in part and denied in part as follows:

| Cause of Action | Named Defendant(s) | Granted or Denied |
|---|---|---|
| **Count I** | | |
| Intentional Infliction of Emotional Distress | 1. Combs | Denied |
| | 2. Egan | Denied |
| **Count II** | | |
| Intentional Infliction of Emotional Distress | 1. Gomez | Granted |
| | 2. Lemke | Granted |
| **Count III** | | |
| Negligent Supervision | 1. Gomez | Granted |
| | 2. Lemke | Granted |
| **Count IV** | | |
| Retaliation Pursuant to 42 U.S.C. § 1983 | 1. Gomez | Granted |
| | 2. Larry | Denied |
| | 3. Lemke | Granted |
| | 4. McGarvey | Denied |
| | 5. Pounovich | Granted |
| | 6. Wilson | Denied |
| **Count V** | | |
| Retaliation Pursuant to 42 U.S.C. § 1983 | 1. Nushardt | Denied |
| **Count VI** | | |
| Excessive Force Pursuant to 42 U.S.C. § 1983 | 1. Nushardt | Denied |
| **Count VII** | | |
| Failure to Protect Pursuant to 42 U.S.C. § 1983 | 1. Gomez | Denied |
| | 2. Lemke | Denied |
| **Count VIII** | | |
| Intentional Infliction of Emotional Distress | 1. Larry | Denied |
| | 2. McGarvey | Denied |
| | 3. Pounovich | Granted |
| | 4. Rivera | Granted |
| | 5. Wilson | Denied |
| **Count IX** | | |
| Retaliation Pursuant to 42 U.S.C. § 1983 | 1. Kartan | Granted |

IT IS SO ORDERED                              Entered:

Dated:  July 27, 2016

_____

John Robert Blakey
United States District Judge