# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Kevin Birdo, | |
|     Plaintiff, | Case No. 13-CV-6864 |
| v. | |
| Deputy Director Dave Gomez et al., | Judge John Robert Blakey |
|     Defendants. | |

## MEMORANDUM OPINION AND ORDER

On July 27, 2016, this Court issued a Memorandum Opinion and Order [172] granting in part and denying in part Defendants' Motions for Summary Judgment [139] and [145]. On August 5, 2016, Defendants John Combs, Anthony Egan, Dave Gomez, Michael Lemke, Jenny McGarvey and Kenneth Nushardt (collectively, the "State Defendants") filed a combined motion to: (1) reconsider the Court's Memorandum Opinion and Order as it relates to Counts I, IV, V, and VIII; and (2) in the alternative, sever Count I pursuant to Federal Rule of Civil Procedure 21. State Defs.' Combined Mot. Reconsider and Sever [173]. On August 25, 2016, Defendants Dr. Catherine Larry and Susan Wilson (collectively, the "Mental Health Defendants") filed a motion to join the State Defendants' combined motion [182], which the Court granted on August 30, 2016.[1] Minute Entry [184]. For the reasons stated below, State Defendants' motion is granted in part and denied in part.

---

[1] The Court's grant of Mental Health Defendants' motion applied only to their request to join State Defendants' combined motion, and did not extend to any substantive arguments raised in Mental Health Defendants' brief.

I.      **Legal Standard**

Motions to reconsider, while permitted, are generally disfavored. *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911 (N.D. Ill. 2015). The Federal Rules of Civil Procedure allow a court to alter or amend a judgment only if the moving party can demonstrate "a manifest error of law or present newly discovered evidence." *Flint v. City of Belvidere*, No. 11-CV-50255, 2014 WL 11397797, at *1 (N.D. Ill. June 17, 2014) (citing *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008)). A party asserting such an error "bears a heavy burden." *Patrick*, 103 F. Supp. 3d at 912. A "manifest error" is not demonstrated merely "by the disappointment of the losing party." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). It is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Id*. Such error occurs "when a district court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Patrick*, 103 F. Supp. 3d at 912 (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990)). A motion to reconsider "does not allow a party to revisit strategic decisions that prove to be improvident, to reargue the evidence, to make new arguments, or to introduce new evidence that could have been presented earlier." *HCP of Illinois, Inc. v. Farbman Grp. I, Inc.*, 991 F. Supp. 2d 999, 1000 (N.D. Ill. 2013).

## II. Discussion

### A. State Defendants' Motion to Reconsider

#### 1. Counts IV and V

Defendants raise three objections to the Court's prior ruling denying summary judgment as to Counts IV and V. First, Defendants claim that there is no evidence in the record to support the proposition that Plaintiff intended to convey a particularized message with his October 2012 hunger strike. State Defs.' Combined Mot. Reconsider and Sever [173] 3. Defendants argue that, absent a particularized message, Plaintiff's hunger strike does not constitute constitutionally protected activity. Second, Defendants assert that, regardless of Plaintiff's intent, there is no showing that "anyone understood the purported rationale behind his hunger strike." *Id.* at 4. According to Defendants, the absence of such evidence undermines the Court's finding that "the likelihood was great that [Plaintiff's] message would be understood by those who viewed it." *Spence v. State of Wash.*, 418 U.S. 405, 411 (1974). Finally, Defendants claim that, even assuming Plaintiff's hunger strike qualified for constitutional protection, such a right was not clearly established at the time of the challenged conduct, thus entitling Defendants to qualified immunity. *Id.* Each of Defendants' arguments will be addressed in turn.

To begin, Defendants misinterpret the record before the Court. The record contains evidence that on August 1, 2012, Plaintiff was involved in a physical altercation with another inmate. PSOAF [159] Attach. 1 at 10:12-23, 16:18-20. As a result of the altercation, Plaintiff injured his right pinkie finger. *Id.* The same

day, Plaintiff received three disciplinary tickets for his role in the altercation. PSOAF [159] Attach. 19.

On August 23, 2012 and September 20, 2012, Plaintiff filed written grievances protesting the three disciplinary tickets and the delay in medical treatment for his injured finger. PSOAF [159] Attachs. 18, 22. A decision regarding Plaintiff's August 23, 2012 grievance was not made until December 2, 2012, when it was denied by Stateville's Grievance Officer. PSOAF [159] Attach. 20. The Grievance Officer's denial was approved by the Chief Administrative Officer on December 6, 2012. *Id*. Plaintiff filed a renewed written grievance regarding his disciplinary tickets on January 23, 2013. PSOAF [159] Attach. 21. Plaintiff testified that he began his hunger strike on October 17, 2012 and continued until April 25, 2013. Based on the above timeline, a reasonable fact-finder could infer that Plaintiff initiated his hunger strike to protest his outstanding disciplinary tickets and the continued delay in medical treatment for his injured finger.

The record is equally clear that multiple individuals at Stateville understood the purpose behind Plaintiff's strike. On November 21, 2012, Plaintiff received outpatient mental health treatment pursuant to Stateville's hunger strike protocol. The mental health provider's progress notes indicate that Plaintiff remained "agitated [and] on hunger strike *to have tickets dropped*." PSOAF [159] Attach. 23 (emphasis added). On March 11, 2013, Plaintiff underwent another mental health evaluation by Dr. John Garlick ("Garlick"). PSOAF [159] Attach. 25. During the evaluation, Plaintiff told Dr. Garlic that he had "been on [a] hunger strike since

4

10/17/12" and that the strike "started [because of] *concerns about unfair discipline.*" *Id.* Such evidence is sufficient to support a finding that Plaintiff's message was understood by those who viewed it.[2]

Defendants' qualified immunity claim, however, demands further consideration. As a preliminary matter, the Court must address the fact that Defendants utterly failed to raise any qualified immunity claim in their initial summary judgment motions. As Plaintiff correctly points out, motions for reconsideration "are not appropriate vehicles" for generally "arguing issues or presenting evidence that could have been raised during the pendency of the motion presently under reconsideration." *Anderson v. Holy See*, 934 F. Supp. 2d 954, 957

---

[2] In its original Response to Plaintiff's Rule 56.1 Statement of Additional Facts, State Defendants argued that Plaintiff's written grievances and mental health records constituted inadmissible hearsay. State Def. Resp. Pl.'s Rule 56.1 Statement of Facts [160] 3-4; *see also Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."). Regarding the former, Plaintiff's grievances constitute records of regularly conducted activity under Federal Rule of Evidence 803(6). To be admissible as a business record, "a document must have sufficient indicia of trustworthiness to be considered reliable." *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). Normally, "to demonstrate such trustworthiness and reliability at the summary judgment stage, the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial, for example, a custodian or anyone qualified to speak from personal knowledge that the documents were admissible business records." *Id.* This requirement, however, has been relaxed in certain, limited circumstances. *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006). For example, the "very act of production [during discovery] is implicit authentication." *Medline Indus., Inc. v. Cymbion, LLC*, No. 09 C 581, 2010 WL 4736315, at *10 (N.D. Ill. Nov. 16, 2010). Here, based upon their Bates-labels and the nature of the documentation, Plaintiff's grievances appear to be produced by Defendants. *See Hackel v. Nat'l Feeds, Inc.*, 986 F. Supp. 2d 963, 968 (W.D. Wis. 2013).

Regarding Plaintiff's mental health notes, Federal Rule of Evidence 803(4) excludes from the hearsay rule statements that are "made for—and [are] reasonably pertinent to—medical diagnosis or treatment" and "describe[] medical history; past or present symptoms or sensations; their inception; or their general cause." Moreover, evidence "that is used only to show notice is not hearsay." *Harden v. Marion Cty. Sheriff's Dep't*, 799 F.3d 857, 861 (7th Cir. 2015) (internal quotation omitted); *see also* Fed. R. Evid. 801(c), Advisory Committee Notes, 1972 Proposed Rules ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."). Consequently, the Court finds that these documents are evidence which could be admissible at trial.

5

(N.D. Ill. 2013), *aff'd sub nom. Anderson v. Catholic Bishop of Chicago*, 759 F.3d 645 (7th Cir. 2014).

Plaintiff avers that Defendants' oversight constitutes waiver of any qualified immunity defense. Pl.'s Resp. State Defs.' Combined Mot. Reconsider and Sever [185] 4. As "with other affirmative defenses upon which the defendants bear the burden of proof, the defense of qualified immunity may be deemed as waived if not properly and timely presented before the district court." *Walsh v. Mellas*, 837 F.2d 789, 799 (7th Cir. 1988) (internal citations omitted); *Doyle v. Camelot Care Centers, Inc.*, 160 F. Supp. 2d 891, 908 (N.D. Ill. 2001), *aff'd*, 305 F.3d 603 (7th Cir. 2002) ("The qualified immunity defense . . . can be waived if the defendant either fails to raise the defense in a timely fashion or fails to raise it with sufficient particularity.").

Other courts, however, have declined the invitation to hold defendants to the harsh standard advocated by Plaintiff. For example, in *Harris v. Houston*, a jury found in favor of the plaintiff on a 42 U.S.C. § 1983 claim. 53 F. Supp. 2d 1027, 1028 (E.D. Wis. 1999). After trial, the defendant submitted a Rule 50 motion based upon the defense of qualified immunity. *Id*. The defendant failed, however, to raise the defense in her pre-trial summary judgment motion. *Id*. Nevertheless, the district court held that the defense had not been waived, even though summary judgment "would have been an appropriate time for the court to have addressed this issue, especially since qualified immunity (if applicable) can operate as a complete bar to suit and is designed to spare government officials the cost and burden of

6

discovery and trial." *Id.* The court supported its finding with the fact that, while the defendant's summary judgment motion was silent on the issue, the defendant "did raise [the defense] in motions that she made just before trial and again after verdict." *Id.*

Similarly, in *Rakovich v. Wade*, the plaintiff, a member of the Greenfield, Wisconsin Civil Service Commission, alleged that members of the Greenfield Police Department conducted an unlawful criminal investigation of the plaintiff that was reported in the local newspaper. 850 F.2d 1180, 1183-84 (7th Cir. 1988). The officers raised a qualified immunity defense, "but did not do so until they moved for a directed verdict at the close of Rakovich's case in chief, although the immunity issue had been raised in their pre-trial brief." *Id.* at 1204. Although the district court denied the motion, the defendants re-raised the issue on appeal. *Id.* The Seventh Circuit held that such circumstances did not constitute a waiver of the qualified immunity defense. *Id.* at n.16. The court reasoned that, although "the purpose of an objective qualified immunity inquiry is to avoid unnecessary burdens on government officials by more frequent use of the summary judgment tool, this does not inhibit the officers' ability to raise the immunity defense at a latter stage of the proceedings." *Id.* at 1204.

Indeed, cases in which courts have held qualified immunity to be waived contain facts more extreme than those presented here. For example, in *Walsh v. Mellas,* 837 F.2d 789, 799 (7th Cir. 1988), the Seventh Circuit found that the defendants waived the defense of immunity because they raised the issue for the

7

first time in their *second appeal* of the case. Similarly, in *McCardle v. Haddad,* 131 F.3d 43, 51–52 (2nd Cir. 1997), the court found that the defendant had waived the defense "where the defendant could show no references to qualified immunity in his pretrial memorandum to the court, made no motion for summary judgment on the basis of qualified immunity, and made no mention of qualified immunity in his proposed jury instructions." *Doyle v. Camelot Care Centers, Inc.*, 160 F. Supp. 2d 891, 908 (N.D. Ill. 2001), *aff'd*, 305 F.3d 603 (7th Cir. 2002); s*ee also Blissett v. Coughlin,* 66 F.3d 531, 538 (2nd Cir. 1995) (where defendants raised qualified immunity in their answer but qualified immunity was not the subject of any pretrial motions, discovery, or pretrial discussions with the court, the defense was waived).

Here, at the very least, State Defendants raised the defense of qualified immunity in their respective answers to Plaintiff's First Amended Complaint. Answer [68] 26; Answer [91] 22-23; Answer [125] 26. Therefore, Plaintiff "could not have been surprised to see qualified immunity appear in the defendants' [reconsideration] motion because they knew the defendants were raising qualified immunity from the beginning of the case." *Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 914 (7th Cir. 2011). The purpose of proper and timely presentment of an affirmative defense is to provide Plaintiff "a reasonable opportunity to file a response and also for the court to study the motion." *Harris*, 53 F. Supp. 2d at 1028. Plaintiff's response to Defendants' motion for reconsideration contains a multi-page discussion of the merits of Defendants' qualified immunity theory. *See*

Pl.'s Resp. State Defs.' Combined Mot. Reconsider and Sever [185] 6-8. Thus, while the Court does "not condone [Defendants'] failure to present their argument fully at what they must have known would be a critical moment in the litigation, as a matter of law their oversight in this case does not amount to a waiver." *Hernandez*, 634 F.3d at 914.

The Court now turns to the merits of Defendants' qualified immunity defense. Immunity "has of course two parts: the right not to be tried, and the right not to pay damages." *Abel v. Miller,* 904 F.2d 394, 397 (7th Cir. 1990). The doctrine of qualified immunity "protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rabin v. Flynn,* 725 F.3d 628, 632 (7th Cir. 2013) (citation omitted). If "the rights were clearly established, the official may be liable for monetary damages and the suit proceeds to the next stage. If the rights were not clearly established, then the official is immune from suit and the claim is dismissed." *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). To be clearly established, "at the time of the challenged conduct, the right's contours must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right and existing precedent must have placed the statutory or constitutional question beyond debate." *Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014) (quoting *Humphries v. Milwaukee Cnty.,* 702 F.3d 1003, 1006 (7th Cir. 2012)).

9

The Seventh Circuit has outlined a three-step progression for determining whether a right is clearly established. First, the Court looks "to controlling Supreme Court precedent and our own circuit decisions on the issue." *Denius*, 209 F.3d at 950. Binding precedent, however, "is not necessary to clearly establish a right." *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1022 (7th Cir. 2000). Therefore, as a second step, in "the absence of controlling precedent, we broaden our survey to include all relevant caselaw in order to determine 'whether there was such a clear trend in the caselaw that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time.'" *Id.* at 951 (quoting *Cleveland–Perdue v. Brutsche,* 881 F.2d 427, 431 (7th Cir. 1989)). A "split among courts regarding the constitutionality of conduct analogous to the conduct in question is an indication that the right was not clearly established at the time of the alleged violation." *Id.* Finally, in "rare cases, where the constitutional violation is patently obvious, the plaintiff may not be required to present the court with any analogous cases, as widespread compliance with a clearly apparent law may have prevented the issue from previously being litigated." *Id.*

Because "there is an almost infinite variety of factual scenarios that may be brought into the courtroom, a plaintiff need not point to cases that are identical to the presently alleged constitutional violation." *Id.* at 950. However, "the contours of the right must have been established so that the unlawfulness of the defendant's conduct would have been apparent in light of existing law." *Cleveland–Perdue*, 881 F.2d at 430.

Turning to the present controversy, it is helpful to separate the constitutional questions implicated by Plaintiff's First Amendment claim and apply them to the tripartite analysis introduced above, starting generally and narrowing to the specific allegations presented here. To begin, controlling precedent has long held that the First Amendment "does not end at the spoken or written word" and that expressive conduct may be "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (quoting *Spence v. State of Wash.*, 418 U.S. 405, 409 (1974)); *United States v. Hayward*, 6 F.3d 1241, 1249 (7th Cir. 1993), *overruled on other grounds by United States v. Colvin*, 353 F.3d 569 (7th Cir. 2003). As to this point, therefore, Defendants cannot convincingly claim that potential constitutional protection of expressive conduct was not clearly established.

Controlling precedent is equally clear, however, that not all expressive conduct is entitled to protection. *See, e.g., United States v. O'Brien,* 391 U.S. 367, 376 (1968) ("We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea."). Therefore, we must narrow our inquiry to the particular conduct in this case: prisoner hunger strikes. *See Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 731 (7th Cir. 2013) ("Importantly, the right must be clearly established in a particularized sense, rather than in an abstract or general sense."). As the Court acknowledged in its original Memorandum Opinion and Order [172], "neither the Supreme Court nor the Seventh Circuit has directly discussed the

11

application of *Texas v. Johnson* to prisoner hunger strikes." Thus, we must proceed to the next stage of the *Denius* inquiry: whether, at the time of Defendants' alleged actions, there was such a clear trend in the case law that the Court can say "with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Denius*, 209 F.3d at 951 (quoting *Cleveland–Perdue,* 881 F.2d at 431).

Such assurance is lacking here. Although the Fifth Circuit declared in 1998 that "a hunger strike may be protected by the First Amendment if it was intended to convey a particularized message," *Stefanoff v. Hays County, Tex.*, 154 F.3d 523, 527 (5th Cir. 1998), by the fall of 2012, cases in other districts were inconsistent as to whether a prisoner hunger strike constitutes protected speech. *Compare Brown v. McGinnis*, No. 05-CV-758S, 2012 WL 267638, at *3 (W.D.N.Y. Jan. 30, 2012) (court assumed, for the purposes of evaluating summary judgment motions, "that a hunger strike is protected activity in the context of a retaliation claim"); *Ajaj v. Fed. Bureau of Prisons*, No. 08-CV-02006-MSK-MJW, 2011 WL 902440, at *12 (D. Colo. Mar. 10, 2011), *aff'd,* 561 F. App'x 657 (10th Cir. 2014) ("The Defendants do not appear to dispute that a hunger strike can constitute activity protected by the First Amendment, and the Court agrees that, in certain circumstances, it can."); *Brown v. Graham*, No. 9:07-CV-1353 FJS ATB, 2010 WL 6428251, at *16 (N.D.N.Y. Mar. 30, 2010), *report and recommendation adopted*, No. 9:07-CV-1353 FJS ATB, 2011 WL 1213482 (N.D.N.Y. Mar. 31, 2011), *aff'd,* 470 F. App'x 11 (2d Cir. 2012); *Hankins v. Beard*, No. CIV.A. 07-332, 2009 WL 5821032, at *26 (W.D. Pa. Nov. 30, 2009), *report*

*and recommendation adopted in part*, No. CIV.A. 07-332, 2010 WL 454910 (W.D. Pa. Feb. 2, 2010); *Bruce v. Woodford*, No. 1:07-CV-00269-AWI-DLB PC, 2009 WL 256390, at *5 (E.D. Cal. Feb. 3, 2009); *Lee v. Burke*, No. 07-CV-1718, 2007 WL 4608730, at *1 (W.D. La. Dec. 11, 2007), *subsequently dismissed*, 311 F. App'x 700 (5th Cir. 2009) *with Khaldun v. Daughtery,* No. 109-CV-350-SEB-TAB, 2009 WL 5170039, at *1 (S.D. Ind. Dec. 17, 2009) ("[Prisoner's] act of going on a hunger strike was not protected activity under the First Amendment"); *Fulton v. Lamarque*, No. C 03-4709 RMW (PR), 2008 WL 901860, at *5 (N.D. Cal. Mar. 31, 2008) ("To the extent defendants segregated and instituted disciplinary proceedings against plaintiff because they believed he instigated the strike, this does not amount to retaliation for the exercise of a constitutional right[] because plaintiff had no First Amendment right to instigate the strike.")

Most notably, district courts within the Seventh Circuit produced two opposite holdings within the two years immediately preceding Defendants' alleged misconduct. In *Gevas v. Ryker*, the District Court for the Southern District of Illinois found that the prisoner plaintiff's declaration of a hunger strike sufficiently described protected activity to support a 42 U.S.C. § 1983 retaliation claim. No. CIV. 10-493-MJR, 2011 WL 711078, at *5 (S.D. Ill. Feb. 22, 2011), *on reconsideration in part on other grounds*, No. 10-CV-493-MJR-SCW, 2011 WL 1458075 (S.D. Ill. Apr. 15, 2011). Subsequently, in *Crawford v. Kalahan,* a sister court stated that it was "not aware of any specific guarantee under the First Amendment, or any other constitutional provision, that protects inmate hunger

strikes," and further stated that the Seventh Circuit "frowned upon this type of coercive tactic." No. 12-CV-1101-JPG, 2012 WL 6016897, at *2 (S.D. Ill. Dec. 3, 2012).

Given such conflicting guidance, this Court cannot conclude that "a clear consensus had been reached" by the time Plaintiff initiated his protest. *Cleveland-Perdue*, 881 F.2d at 431. Thus, while the Court reaffirms its finding that Plaintiff's actions in relation to the purported retaliation were constitutionally protected, State Defendants McGarvey and Nushardt are nonetheless entitled to qualified immunity. This holding is consistent with other district courts that have granted qualified immunity for similar underlying claims. *See Brown v. McGinnis*, No. 05-CV-758S, 2012 WL 267638, at *3 (W.D.N.Y. Jan. 30, 2012); *Brown v. Graham*, No. 9:07-CV-1353 FJS ATB, 2010 WL 6428251, at *16 (N.D.N.Y. Mar. 30, 2010), *report and recommendation adopted*, No. 9:07-CV-1353 FJS ATB, 2011 WL 1213482 (N.D.N.Y. Mar. 31, 2011), *aff'd*, 470 F. App'x 11 (2d Cir. 2012). Therefore, Count IV of Plaintiff's First Amended Complaint [61] is dismissed as it relates to Defendant McGarvey. Count V, which names only Defendant Nushardt, is also dismissed.

Qualified immunity does not apply, however, to Mental Health Defendants Larry and Wilson. In *Currie v. Chhabra*, the administrator of a decedent prisoner's estate brought suit alleging violations of the prisoner's constitutional rights. 728 F.3d 626, 627 (7th Cir. 2013). Two of the named defendants were employees of a private company under contract to provide medical services to the county's inmates. *Id*. Prior to trial, the private employees filed a motion to dismiss on the grounds of

14

qualified immunity. *Id*. On appeal, the Seventh Circuit acknowledged a "lack of clarity" regarding "the threshold issue whether the defense of qualified immunity is *ever* available to private medical care providers like the defendants." *Id*. at 631 (emphasis in original). Although the court did not "definitively decide the issue," it voiced approval for the Sixth Circuit's holding in *McCullum v. Tepe,* 693 F.3d 696 (6th Cir. 2012), that "a [private] doctor providing psychiatric services to inmates at a state prison is not entitled to assert qualified immunity." *Currie*, 728 F.3d at 632. The Seventh Circuit was even more assertive—albeit in dicta—in *Petties v. Carter*, No. 14-2674, 2016 WL 4631679, at *8 (7th Cir. Aug. 23, 2016) ("qualified immunity does not apply to private medical personnel in prisons") and *Shields v. Illinois Department of Corrections,* 46 F.3d 782, 794 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1024 (2015) ("private prison employees are barred from asserting qualified immunity from suit under § 1983"). Therefore, Count IV of Plaintiff's First Amended Complaint [61] stands as it relates to Defendants Larry and Wilson.

### 2. Counts I and VIII

Regarding Count I, State Defendants argue that, because the Court's July 27, 2016 Memorandum Opinion and Order [172] granted State Defendants' Motion for Summary Judgment [139] as it related to Count IV, Plaintiff's intentional infliction of emotional distress claim against Defendants Combs and Egan no longer derives from a "common nucleus of operative facts" with Plaintiff's remaining federal claims. State Defs.' Combined Mot. Reconsider and Sever [173] 5-6. Similarly, State Defendants request that if the Court dismisses Count IV as it relates to

15

Defendant McGarvey (as it does *supra*), "the Court should also decline to exercise supplemental jurisdiction over the intentional infliction of emotional distress claim" against McGarvey found in Count VIII. *Id.* at n.1. The Court rejects State Defendants' invitation as to both claims.

First, the state claims against Defendants Combs, Egan, and McGarvey remain sufficiently related to Plaintiff's outstanding federal claims. Under 28 U.S.C. § 1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Claims form part of the same case or controversy when they "derive from a common nucleus of operative fact." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 (7th Cir. 1999) (quoting *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164–65 (1997)). To satisfy this requirement, "a loose factual connection between the claims is generally sufficient." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 683 (7th Cir.), *reh'g denied*, 769 F.3d 535 (7th Cir. 2014) (quoting *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). Here, Plaintiff's claims—both state and federal—derive from the same underlying act: Plaintiff's October 2012 hunger strike. All of the purported misconduct occurred within a limited timeframe (between February 3, 2013 and March 7, 2013), and was allegedly inspired by the same motive to break Plaintiff's resolve. While some evidence regarding each claim will undoubtedly be unique, other evidence—including details surrounding Plaintiff's strike and

16

Stateville's hunger strike procedures—will overlap. This is sufficient to meet the "loose factual connection" standard.

Moreover, issues of relatedness aside, the exercise of supplemental jurisdiction "is purely discretionary." *Bailey v. City of Chicago*, 779 F.3d 689, 696 (7th Cir. 2015), *cert. denied sub nom.*, 136 S. Ct. 200 (2015). Although a district court "may relinquish supplemental jurisdiction following the dismissal of all federal claims," it is "not required to do so, unless the federal claims are frivolous and so do not engage the jurisdiction of the federal courts." *Doe-2 v. McLean Cty. Unit Dist. No. 5 Bd. of Directors*, 593 F.3d 507, 513 (7th Cir. 2010). Indeed, a district court may retain jurisdiction in cases where "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." *RWJ Mgmt. Co. v. BP Prod. N. Am., Inc.*, 672 F.3d 476, 480 (7th Cir. 2012) (quoting *Sharp Elecs. Corp. v. Metro. Life Ins. Co.,* 578 F.3d 505, 514–15 (7th Cir. 2009)). Evaluating judicial efficiency, of course, "is not just a matter of toting up months or motions or the page counts of judicial orders. Rather, concerns about judicial economy have their greatest force when significant federal judicial resources have already been expended to decide the state claims, or when there is no doubt about how those claims should be decided." *Id.* at 481.

Here, Plaintiff originally filed suit on September 23, 2013. Compl. [1]. This district has devoted over three years bringing Plaintiff's case—including his state law claims—to trial. During that time, the Court has expended considerable resources to review Plaintiff's complaint pursuant to 28 U.S.C. § 1915A; recruit pro

17

bono counsel to aid Plaintiff; serve Defendants Combs and Egan, the subjects of Count I; litigate State Defendants' Motion for Judgment on the Pleadings [88], which included arguments regarding Counts I and VIII; litigate State Defendants' Motion for Summary Judgment [139], which also included arguments regarding Counts I and VIII; and litigate State Defendants' Combined Motion to Reconsider and Sever [173]. More generally, the Court has held no less than eleven hearings and issued forty-five minute entries or judicial orders. Three federal judges have overseen progress on the case. Presently, both written and fact discovery are complete, and expert discovery is nearing an end. Trial is docketed less than four months from today. In short, remanding Counts I or VIII to state court will undoubtedly result in unnecessary duplication of time, money, and effort. Therefore, State Defendants' motion for reconsideration as it relates to Counts I and VIII is denied.

### B. State Defendants' Motion to Sever

Finally, Defendants argue that, as an alternative to dismissal, Count I should be severed pursuant to Federal Rule of Civil Procedure 21. Rule 20(a) "provides for permissive joinder when two requirements are met. First, the cases to be joined must contain a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences. Second, there must be a question of law or fact common to all the plaintiffs." *McDowell v. Morgan Stanley & Co.*, 645 F. Supp. 2d 690, 694 (N.D. Ill. 2009) (internal citations and quotations omitted). If "the Court finds that joinder is improper, Rule 21 comes into effect." *Id.* Under that

rule, the Court "may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21.

In ascertaining "whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, a case-by-case approach is generally pursued because no hard and fast rules have been established." *Adkins v. Illinois Bell Tel. Co.*, No. 14-CV-1456, 2015 WL 1508496, at *7 (N.D. Ill. Mar. 24, 2015). Courts interpret "transaction or occurrence" as "comprehending a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Id*. (quotations omitted). Courts consider "a variety of factors, including whether the alleged conduct occurred during the same general time period, involved the same people and similar conduct, and implicated a system of decision-making or widely-held policy." *Id*. (quotations omitted).

Additionally, a court "may be inclined to find that the claims before it arose out of the same transaction when 'separate trials would result in delay, inconvenience and added expense to the parties and the court because of the likelihood of overlapping proof and duplication in testimony.'" *McDowell*, 645 F. Supp. 2d at 694 (quoting *Maclin v. N. Telecom, Inc.*, No. 95-CV-7485, 1996 WL 495558, at *6 (N.D. Ill. Aug. 28, 1996)). In other words, the Court must "keep in mind the purpose of Rule 20, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing unnecessary multiple lawsuits." *Id*.

For the reasons discussed *supra,* the Court finds that Count I derives from the same series of transactions or occurrences as Plaintiff's other claims. The Defendants' concerns of evidentiary spill-over can be adequately addressed via jury instructions. Therefore, State Defendants' motion to sever is denied.[3]

### III. Conclusion

State Defendants' Combined Motion to Reconsider and Sever [173] is granted in part and denied in part. Count IV of Plaintiff's First Amended Complaint [61] is dismissed as it relates to Defendant McGarvey. Count IV stands as it relates to Defendants Larry and Wilson. Count V of Plaintiff's First Amended Complaint [61] is dismissed. Defendants' motion to reconsider as it relates to Counts I and VIII is denied. Defendants' motion to sever Count I is denied.

SO ORDERED

Dated: October 17, 2016

Entered:

_____
John Robert Blakey
United States District Judge

---

[3] The introductory paragraph of State Defendants' motion also alludes to bifurcation pursuant to Federal Rule of Civil Procedure 42(b). State Defs.' Combined Mot. Reconsider and Sever [173] 1. State Defendants neglect, however, to substantively discuss the standards for bifurcation or its appropriateness in the present case. Therefore, to the extent State Defendants' motion requests bifurcation as an alternative to severance, that request is denied without prejudice at this point in the proceedings.