UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN BIRDO,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>DEPUTY DIRECTOR DAVE GOMEZ, *et al.*,<br><br>　　　Defendants. | Case No. 13-cv-6864<br><br>Judge John Robert Blakey |

# MEMORANDUM OPINION

This Court began a jury trial in the subject case on January 23, 2017. At the beginning of trial, five causes of action against eight individual Defendants remained from Plaintiff's First Amended Complaint [61]:[1]

| Cause of Action | Relevant Named Defendant(s) |
|---|---|
| **Count I** | |
| Intentional Infliction of Emotional Distress | 1. John Combs<br>2. Anthony Egan |
| **Count IV** | |
| Retaliation Pursuant to 42 U.S.C. § 1983 | 1. Catherine Larry<br>2. Susan Wilson |
| **Count VI** | |
| Excessive Force Pursuant to 42 U.S.C. § 1983 | 1. Kenneth Nushardt |
| **Count VII** | |
| Failure to Protect Pursuant to 42 U.S.C. § 1983 | 1. David Gomez<br>2. Michael Lemke |

---

[1] Plaintiff's First Amended Complaint [61] originally alleged nine causes of action against eleven individual defendants. On July 27, 2016, the Court granted summary judgment as to certain counts and certain Defendants. Mem. Opinion and Order [172]. On October 17, 2016, the Court dismissed additional counts and Defendants. Mem. Opinion and Order [195].

| Count VIII | |
|---|---|
| Intentional Infliction of Emotional Distress | 1. Jenny McGarvey |
| | 2. Catherine Larry |
| | 3. Susan Wilson |

On January 25, 2017, at the conclusion of Plaintiff's case-in-chief, all Defendants moved for judgment as a matter of law pursuant Federal Rule of Civil Procedure 50(a). After considering the parties' written submissions [229], [230] and oral arguments, the Court orally granted in part and denied in part the Defendants' motions. Specifically, the Court granted Defendants' motions as to Plaintiff's intentional infliction of emotional distress ("IEED") claims (Counts I and VIII), but denied Defendants' motions as to Plaintiff's retaliation, excessive force, and failure to protect claims under 42 U.S.C. § 1983 (Counts IV, VI, and VII). At the conclusion of trial, the jury rejected Plaintiff's claims and returned a verdict in favor of all remaining Defendants on each of Plaintiff's three remaining causes of action. Verdict [236].

This Memorandum Opinion supplements the Court's oral ruling. The jury's verdict on Plaintiff's retaliation, excessive force, and failure to protect claims (Counts IV, VI, and VII) rendered the Court's denial of Defendants' motions as to those claims moot. Therefore, they will not be further discussed. The below analysis explains the Court's rationale for granting Defendants' motions as to Plaintiff's IEED claims (Counts I and VIII).

I.      **Legal Standard**

A court should render judgment as a matter of law when "a party has been fully heard on an issue" and there is no "legally sufficient evidentiary basis" for a reasonable jury to find for that party on that issue. Fed. R. Civ. P. 50(a). The standard for granting judgment as a matter of law "mirrors the standard for granting summary judgment." *Pandya v. Edward Hosp.*, 1 F. App'x 543, 545 (7th Cir. 2001) (internal quotations omitted). Thus, the Court examines the record in its entirety and views the evidence in the light most favorable to the nonmoving party. *Id.* After doing so, the Court determines "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support [a] verdict." *Mathur v. Bd. of Trustees of S. Illinois Univ.*, 207 F.3d 938, 941 (7th Cir. 2000) (quotations omitted). Judgment as a matter of law is proper "if a reasonable person could not find that the evidence supports a decision for a party on each essential element of the case." *Campbell v. Peters*, 256 F.3d 695, 699 (7th Cir. 2001).

In making this determination, the Court "may not step in and substitute its view of the contested evidence for the jury's." *Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 634 (7th Cir. 1996). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Nevertheless, "there must be more than a mere scintilla of evidence" in support of the nonmoving party's case. *Estate of Escobedo v. Martin*,

702 F.3d 388, 403 (7th Cir. 2012). Thus, judgment should be entered where the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**II.    Discussion**

To establish an intentional infliction of emotional distress claim under Illinois law, Plaintiff was required to introduce sufficient evidence that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress; and (3) the defendant's conduct did cause severe emotional distress. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006).

    **A.    Extreme and Outrageous Conduct**

The standard for extreme and outrageous conduct is high. It is not enough that the defendant act "with an intent which is tortious or even criminal, or that he intend to inflict emotional distress, or even that his conduct be characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Cook v. Winfrey*, 141 F.3d 322, 331 (7th Cir. 1998); Restatement (Second) of Torts § 46 cmt. d (1965). Extreme and outrageous conduct "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). Rather, extreme and outrageous conduct exists only where the conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all

4

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bergstrom v. McSweeney*, 294 F. Supp. 2d 961, 969 (N.D. Ill. 2003). Generally, the case is one in which "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim: 'Outrageous!'" *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 747 (7th Cir. 2008) (ellipses omitted).

The Supreme Court of Illinois has promulgated a number of non-exclusive factors that help inform this analysis. *See McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). First, "the degree of power or authority which a defendant has over a plaintiff" can impact whether that defendant's conduct is outrageous. *Honaker*, 256 F.3d at 490 (quoting *McGrath*, 533 N.E.2d at 809). The "more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment." *Id.* at 491. Another factor is whether the defendant "reasonably believed that his objective was legitimate." *Id.* Greater latitude is given to a defendant "pursuing a reasonable objective even if that pursuit results in some amount of distress for a plaintiff." *Id.* A final consideration is whether the plaintiff "is particularly susceptible to emotional distress because of some physical or mental condition or peculiarity." *Id.* Behavior "that otherwise might be considered merely rude, abrasive or inconsiderate may be deemed outrageous if the defendant knows that the plaintiff is particularly susceptible to emotional turmoil." *Id.*

In determining whether conduct is extreme and outrageous, courts use an objective standard based upon all the facts and circumstances of a particular case. *Cobige v. City of Chicago*, No. 06-cv-3807, 2009 WL 2413798, at *13 (N.D. Ill. Aug. 6, 2009). Conduct "does not exist in a vacuum and must be viewed in its pertinent context." *Carr v. Vill. of Richmond*, No. 96-cv-50203, 1996 WL 663921, at *8 (N.D. Ill. Nov. 15, 1996).

### B. Intent to Inflict Severe Emotional Distress

Prong two of an IEED claim "can be established with proof of either intentional or reckless conduct." *Fielding v. Lavender*, No. 02-cv-0991, 2003 WL 742190, at *4 (N.D. Ill. Mar. 3, 2003) (citing *Vance v. Chandler,* 597 N.E.2d 233, 237 (Ill. App. Ct. 1992)). In other words, the tort applies "where the actor *desires* to inflict severe emotional distress," where "he *knows* that such distress is certain, or substantially certain, to result from his conduct," or where he acts recklessly "in *deliberate disregard* of a high degree of probability that the emotional distress will follow." Restatement (Second) of Torts § 46 cmt. i (1965) (emphasis added).

### C. Severe Emotional Distress

In Illinois, "emotional distress alone is not sufficient to give rise to a cause of action. The emotional distress must be severe." *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006). Emotional distress "passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like." Restatement (Second) of Torts § 46 cmt. j (1965). It includes "all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation,

6

embarrassment, anger, chagrin, disappointment, worry, and nausea." *Id.* It is "only where it is extreme," however, "that the liability arises." *Id.* "Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people." *Id.* The law intervenes "only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id.*

Over time, Illinois courts "have delineated with some precision the type of emotional distress that is sufficiently severe to meet the law's requirements." *Honaker v. Smith*, 256 F.3d 477, 496 (7th Cir. 2001). Plaintiffs fail when they complain that a defendant's actions "caused them simply to become annoyed, frustrated, stressful, distressed, embarrassed, humiliated or nervous." *Id.* (collecting cases).[2] In contrast, Illinois courts "have been more inclined to

---

[2] *See, e.g., Karkomi v. American Airlines, Inc.*, 717 F. Supp. 1340, 1345 (N.D. Ill. 1989) (airline passengers, whose tickets were confiscated by airline, sustained at worst brief "public humiliation and embarrassment" and perhaps fleeting fear of being unable to return home); *Johnson v. K Mart Corp.*, 723 N.E.2d 1192, 1198 (Ill. App. Ct. 2000) (plaintiffs merely noted "feelings of stress or distrust" when employer placed private detectives in workplace to uncover personal information); *Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 684 (Ill. App. Ct. 1999) (employees of nuclear power station who suffered "anxiety, humiliation and extreme and severe emotional distress" could not demonstrate sufficient severity due to demotions that allegedly arose from their voicing of safety concerns), *appeal denied,* 720 N.E.2d 1107 (Ill. 1999); *Adams v. Sussman & Hertzberg, Ltd.*, 292 N.E.2d 935, 942 (Ill. App. Ct. 1997) (fear and embarrassment for reputation regarding arrest for traffic violations, reducing plaintiff to tears, insufficient to show emotional distress); *Knysak v. Shelter Life Ins. Co.*, 652 N.E.2d 832 (Ill. App. Ct. 1995) (depression and distress suffered as a result of insurer's failure to pay insured spouse's medical bills not sufficient); *Khan v. American Airlines,* 639 N.E.2d 210, 215 (Ill. App. Ct. 1994) (recurring nightmares, problems with sleeping and fear of re-arrest were not severe distress for passenger wrongly charged with theft of ticket by airline); *Sutherland v. Illinois Bell*, 627 N.E.2d 145, 154 (Ill. App. Ct. 1993) (insufficient distress shown where customer was "frustrated, annoyed and disgusted" with her phone service and was pressured by phone company to pay bills); *Lundy v. Calumet City,* 567 N.E.2d 1101, 1104 (Ill. App. Ct. 1991) (embarrassment or distress suffered by plaintiff police officers when they were stripped of badges and guns and relieved of duty until they could undergo a psychological reevaluation did not support claim); *Miller v. Equitable Life Assurance Soc'y,* 537 N.E.2d 887, 889-90 (Ill. App. Ct. 1989) (plaintiff-employee's "stress" was not severe enough to establish cause of action where she alleged that her coworkers were inconsiderate, uncooperative, unprofessional and unfair).

characterize the emotional distress as severe" when the distress has manifested itself "either through physical symptoms or has necessitated medical treatment." *Id.* (collecting cases).[3] Physical injury and medical treatment, of course, are not indispensable, and Illinois courts have still found severe emotional distress "when no physical manifestation of the emotional distress existed and where no medical treatment was sought." *Id.* Such cases, however, are extreme. *See, e.g., Amato v. Greenquist*, 679 N.E.2d 446, 455 (Ill. App. Ct. 1997) (plaintiff satisfactorily alleged that minister's actions caused him severe distress when minister abused counseling relationship with plaintiff's wife by engaging in affair with her, causing "depression, despair, insomnia, anxiety, nervousness and emotional trauma" in plaintiff); *Vance v. Chandler*, 597 N.E.2d 233, 237 (Ill. App. Ct. 1992) (plaintiff could survive motion to dismiss when her estranged husband allegedly conspired to have her murdered, which caused her to become "extremely fearful for her life, safety, health and welfare" and to suffer "great emotional distress").

As a final point, the individual elements of an IIED claim are, to a certain degree, linked. That is, in many cases, "the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed." *Honaker*, 256 F.3d at 496 (quoting *Wall v. Pecaro*, 561 N.E.2d 1084, 1088

---

[3] *See, e.g., Doe v. Calumet City*, 641 N.E.2d 498, 508 (Ill. 1994) (severe distress established where plaintiff required psychological care after the incident); *McGrath v. Fahey*, 533 N.E.2d 806, 808 (Ill. 1988) (severe distress shown where plaintiff alleged that defendant engaged in pattern of extortion to defraud plaintiff out of millions of dollars, and where plaintiff experienced anxiety, became physically ill when discussing the situation, and later suffered a heart attack); *Pavilon v. Kaferly*, 561 N.E.2d 1245, 1252 (Ill. App. Ct. 1990) (severe distress established where employer's threatening conduct forced employee to continue her psychotherapy treatment for long duration and where therapist's testimony described employee as being "scared, angry, and unable to cope with her child, her work and her relationship with men generally").

8

(Ill. App. Ct. 1990)). These cases acknowledge that, "even when significant evidence [is] not presented as to the severity of distress, the very nature of the conduct involved may be evidence of its impact on the victim." *Id.* As a result, Illinois courts have tended "to merge the issue of the outrageousness of the defendant's conduct with the issue of the severity of the plaintiff's emotional distress, in effect requiring more evidence of outrageousness the weaker the evidence of distress." *Id.* (quoting *Bristow v. Drake St. Inc.*, 41 F.3d 345, 350 (7th Cir. 1994)).

### D. Defendants John Combs and Anthony Egan (Count I)

At trial, Plaintiff testified that on February 4, 2013, the Stateville Correctional Center tactical team "positioned [him] in a corner within [his] cell" while Defendants Combs and Egan "began going through the property that [Plaintiff] had in the cell." Tr. [239] 51:19-21, 54:6-7. Specifically, Plaintiff possessed two bags of personal property that he kept under his bed. *Id.* at 52:25-53:1, 53:22-23. One bag contained cosmetics such as a comb, soap, hair grease, and the like. *Id.* at 53:2-3. The other bag contained Plaintiff's personal writings, screenplays he had written, obituaries, family pictures and letters, and legal mail. *Id.* at 53:3-6. Defendants took Plaintiff's property and informed him that his items were going into the trash. *Id.* at 55:2-11, 56:5-13. In the end, Plaintiff was left with "maybe a couple of bars of soap" and "a few pieces of legal mail." *Id.* at 56:11-12. Plaintiff never saw his personal property again. *Id.* at 56:12-13, 57:11-12.

Plaintiff further testified that Defendants Combs and Egan made disrespectful comments as they rummaged through his belongings. *Id* at 54:14.

9

They asked, for example, whether Plaintiff's recently deceased cousin "was killed in a drive-by," and told Plaintiff that his deceased mother was ugly. *Id*. at 54:14-21, 55:12-14. Plaintiff characterized Defendants Combs and Egan as "taunting" him and attempting to provoke him. *Id*. at 54:21-22.

On these facts, a reasonable fact finder could not, as a matter of law, deem the conduct of Defendants Combs and Egan extreme and outrageous. Although Defendants Combs and Egan purportedly directed contemptuous comments towards Plaintiff, extreme and outrageous conduct does not extend to "mere insults" or "indignities." *Cook v. Winfrey*, 141 F.3d 322, 331 (7th Cir. 1998). Likewise, the disposal of Plaintiff's toiletries and cosmetics constitutes, at most, the very "annoyances" or "petty oppression" that Illinois law has deemed not actionable. *Id.*

The seizure of Plaintiff's personal writings, screenplays, obituaries, family pictures and letters, and legal mail is closer to the mark, particularly given Defendants' total "power and authority" over Plaintiff in a prison setting. *See McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). Nevertheless, without more (and there is no more here), the Court cannot say that a reasonable jury could find such misconduct to be "so outrageous in character" or "extreme in degree" as to "go beyond all possible bounds of decency," and be regarded as "atrocious" and "utterly intolerable in a civilized community," in light of the relevant case law. *Bergstrom v. McSweeney*, 294 F. Supp. 2d 961, 969 (N.D. Ill. 2003).

Moreover, even assuming, *arguendo*, that the conduct of Defendants Combs and Egan *was* extreme and outrageous, Plaintiff also failed to introduce evidence of

10

severe emotional distress. Plaintiff merely testified that the actions of Defendants Combs and Egan "hurt" and put Plaintiff "in distress" because there "was nothing [he] could do about it." Tr. [239] 55:16-20, 124:3. Ordinary annoyance, frustration, stress, embarrassment, humiliation, and nervousness, however, are not enough. *Honaker v. Smith*, 256 F.3d 477, 496 (7th Cir. 2001). Furthermore, while bodily injury and medical treatment are not *per se* requirements, Plaintiff did not testify regarding any physical manifestations of his distress, and acknowledged that he never sought mental health treatment or intervention as a result of the incident. *See id.*; Tr. [239] 122:23-123:25. To the contrary, Plaintiff continued to invite additional interactions with the Stateville tactical team by refusing to be force fed by Stateville medical staff. *See e.g. id.* at 127:2-12. In sum, given the dearth of evidence on the subject, a reasonable fact finder could not find Plaintiff's distress so severe "that no reasonable man could be expected to endure it." Restatement (Second) of Torts § 46 cmt. j (1965).

### E. Defendants Jenny McGarvey, Catherine Larry, and Susan Wilson (Count VIII)

Plaintiff's IEED claims against Defendants McGarvey, Larry, and Wilson in suffer from similar deficiencies. First, evidence of Defendant McGarvey's "conduct" was practically nonexistent. Throughout his case-in-chief, Plaintiff only presented evidence that, immediately prior to Plaintiff's placement on suicide watch, Defendant McGarvey told Defendant Wilson, "We're tired of this shit. Aren't you tired of this shit?" or words to that effect. Tr. [239] at 85:22-86:3, 133:16-134:8. Plaintiff, however, introduced no evidence establishing Defendant McGarvey's

11

relationship with Defendant Wilson, the individual who ultimately instituted crisis intervention. Rather, Plaintiff only testified that Defendant McGarvey "was in charge of the tactical team"—of which Defendant Wilson was not a member. *Id*. at 62:13-21, 137:19-21. Without more, therefore, Defendant McGarvey's singular statement does not establish that: (1) she desired to inflict severe emotional distress on Plaintiff; (2) she knew that such distress was substantially certain to result; or (3) she acted in deliberate disregard of a high degree of probability that emotional distress would follow. *See* Restatement (Second) of Torts § 46 cmt. i (1965) (emphasis added).

Plaintiff's evidence regarding Defendants Larry and Wilson, of course, was more direct. Plaintiff testified that just before Defendant Wilson formally placed him on suicide watch, he overheard Defendant Larry state, "No. Put his ass on suicide watch. That's how you get him off this hunger strike." Tr. [239] 85:24-86:1, 157:15-17, 162:6-7. Plaintiff further testified that, as a result of the assignment, he was ordered to remove all of his clothes and undergo a strip search. *Id*. at 88:5-6, 88:22-89:1. The search required Plaintiff, among other things, to lift his testicles and penis and spread his buttocks. *Id*. at 89:24-90:6. Afterwards, Plaintiff was placed in handcuffs and leg shackles and ordered to walk down the hall, still naked, approximately twenty feet to his observation cell. *Id*. at 90:10-21. The entire process was videotaped by a female prison guard. *Id*. at 88:19-20, 89:15-17. Plaintiff's observation cell contained no amenities other than a toilet and steel cot, and Plaintiff was provided only a "security blanket" for cover. *Id*. at 91:3-5, 8-14.

12

The cell was "cold" and "filthy" and contained food, feces, and urine stains. *Id.* at 95:17-21. Aside from a brief court visit on March 8, 2013, Plaintiff remained naked in his observation cell until March 11, 2013, when he was transferred to Pontiac Correctional Center. *Id.* at 100:21-23, 101:12-18, 102:12-20, 160:2-161:11.

Certainly, improperly placing a prisoner on suicide watch in retaliation for the exercise of his First Amendment rights treads closer to extreme and outrageous. In evaluating Defendants conduct, however, the Court must remain cognizant of Plaintiff's prisoner status. *See Cobige v. City of Chicago*, No. 06-cv-3807, 2009 WL 2413798, at *13 (N.D. Ill. Aug. 6, 2009) ("In determining whether conduct is extreme and outrageous under the first IIED element, courts use an objective standard based on all the facts and circumstances of a particular case."); *Carr v. Vill. of Richmond*, No. 96-cv-50203, 1996 WL 663921, at *8 (N.D. Ill. Nov. 15, 1996) ("The tort of intentional infliction of emotional distress does not exist in a vacuum and must be viewed in its pertinent context."). Conduct deemed extreme and outrageous in one context is not necessarily extreme and outrageous in the next. Here, the conditions described by Plaintiff—strip searches, physical restraints, and videotaping of otherwise intimate moments—may be considered shocking when viewed through the lens of general society, but are nonetheless common and necessary in prison settings. At the same time, the Court recognizes that while prisoners "do give up many rights of citizenship," they do not surrender their humanity "at the prison gate." *See Wilson v. Schomig*, 863 F. Supp. 789, 793 (N.D. Ill. 1994) (confirming rights of prisoners to equal protection).

Ultimately, due to the interplay between the first and third elements of Plaintiff's IEED claim, the Court need not delineate the precise placement of Defendants' conduct on the extreme and outrageous spectrum. As outlined above, Illinois law demands "more evidence of outrageousness the weaker the evidence of distress." *Honaker v. Smith*, 256 F.3d 477, 496 (7th Cir. 2001). Here, Plaintiff introduced no evidence of severe emotional distress. Plaintiff only testified that his placement on suicide watch was "humiliating" and that he was "emotional," "upset," "hurt," "embarrassed," and "confused" because he "had never been subjected to anything like that before." Tr. [239] at 90:22-25, 93:2-3, 156:15-16. As discussed above, this is insufficient.

Moreover, Plaintiff's failure to establish severe distress via his testimony remained consistent with the other evidence in the case, including the testimony of Dr. John Garlick, the clinical psychologist who treated Plaintiff at Pontiac Correctional Center. Tr. [240] 7:19-21. Dr. Garlick testified that during his mental health assessment of Plaintiff on March 11, 2013—the day he was removed from suicide watch—Plaintiff told Dr. Garlick that "life [was] beautiful." *Id*. at 7:22-8:2, 8:19-21. Dr. Garlick also testified that he did not observe "any immediate evidence" of harm as a result of Plaintiff's time at Stateville. *Id*. at 8:22-25. To the contrary, during the assessment, Plaintiff was not "emotional" or "upset" about what happened to him. *Id*. at 16:25-17:3. Plaintiff was not "anxious," "afraid," or "angry," and did not state that he was fearful of anyone. *Id*. at 6:24-7:5, 17:4-6. In fact, Dr. Garlick testified that the two "had a pleasant conversation." *Id.* at 6:20-23, 8:17-18.

As a matter of law, such evidence does not establish severe emotional distress for the purposes of Plaintiff's IEED claim.

In sum, the stark shortcomings in Plaintiff's distress evidence required sizable compensation by the nature of Defendants' conduct. For the purposes of the Court's ruling, it is enough to say that the evidence introduced, even when viewed in the light most favorable to Plaintiff, did not meet this high bar.

### III. Conclusion

Defendants' motions for judgment as a matter law on Plaintiff's IEED claims (Counts I and VIII) were properly granted for the reasons stated above.

Dated: April 3, 2017

Entered:

_____
John Robert Blakey
United States District Judge